[Civ. No. 19664. First Dist., Div. Two. May 21, 1962.]

WILLIAM G. JAMISON, Plaintiff and Appellant, v. MARTIN W. DEBENHAM et al., Defendants and Respondents.

Russell P. Studebaker, William Steinberg and Abraham Berry for Plaintiff and Appellant.

Peart, Baraty & Hassard, Robert D. Huber, Clark, Heafey & Martin and Gerald P. Martin, Jr., for Defendants and Respondents.

AGEE, J.—Plaintiff appeals from a judgment entered upon an adverse jury verdict in a malpractice action against the doctor who operated upon him and the hospital where the operation was performed. The correctness of the diagnosis of plaintiff's condition and the advisability of the surgery which followed are not in question.

The operation involved a resection of the sigmoid colon and required a large incision in the lower part of the abdomen. The incision was closed with sutures upon completion of the operation but the edges pulled apart eight days later, while plaintiff was seated on a commode attempting to have a bowel movement. A partial evisceration occurred and a second operation was required to reclose the incision. The amount of the damage sustained by plaintiff as the result of the wound separation was substantial but is not an issue on this appeal and is therefore not detailed herein.

Motions for nonsuit and directed verdict were denied. Plaintiff does not assert that the verdict against him was not supported by substantial evidence. The sole contention on this appeal is that the trial court erred in refusing to instruct the jury on the doctrine of res ipsa loquitur. In determining this question, the evidence must be viewed in the light most favor-

able to the plaintiff. However, there must be some evidence which is sufficient to permit the jury to draw the inference of negligence before an instruction on the doctrine should be given.

Plaintiff's contention against the defendant doctor is that he was negligent in the suturing of the incision and that such negligence was the proximate cause of the dehiscence (wound separation) which occurred eight days later. His theory of liability against the hospital is that it was negligent in failing to keep a scultetus binder around his abdomen continuously and that such failure proximately caused the dehiscence.

In medical malpractice actions the doctrine of res ipsa loquitur is applicable only where it is a matter of common knowledge among laymen or medical men, or both, that the injury ordinarily or probably would not have occurred without someone's negligence. (*Salgo* v. *Leland Stanford etc. Board of Trustees,* 154 Cal.App.2d 560, 570 [317 P.2d 170]; *Wolfsmith* v. *Marsh,* 51 Cal.2d 832, 835 [337 P.2d 70].)

### COMMON KNOWLEDGE AMONG MEDICAL MEN

There is no expert testimony in the record that a dehiscence such as that involved in the instant case ordinarily or probably would not have occurred in the absence of negligence. The gist of this testimony is that a dehiscence occurs in a small percentage of abdominal operations without any negligence by anyone; that it is a calculated risk inherent in this type of operation even when done under standard procedure and with the use of all known safeguards; that it does not ordinarily or probably result from negligence. As to the binder, the expert testimony is that its use may or may not be indicated; that it may give the patient a feeling of security and comfort but that its only medical advantage is to keep the dressing intact and that it in no way will prevent a dehiscence.

### COMMON KNOWLEDGE AMONG LAYMEN

"The conclusion that negligence is the most likely explanation of the accident, or injury, is not for the trial court to draw, or to refuse to draw so long as plaintiff has produced sufficient evidence to permit the jury to draw the inference of negligence even though the court itself would not draw that inference; the court must still leave the question to the jury where reasonable men may differ as to the balance of probabilities." (*Seneris* v. *Haas,* 45 Cal.2d 811, 827 [291 P.2d 915, 53 A.L.R.2d 124].)

*Bauer* v. *Otis* (1955) 133 Cal.App.2d 439 [284 P.2d 133],

involved a "wrist drop" which occurred immediately following a needle injection of a vitamin complex into plaintiff's arm. Justice Bray, speaking for the court, graphically describes the situation as one calling for the application of the doctrine based upon common knowledge of laymen. He states: "Needle injections of cold shots, penicillin, and many other serums have become commonplace today. Hardly a man, woman or child (even those of tender age) exists in this country who has not had injections of one kind or another. Many persons have had numerous injections. Right now, thousands of children have received, and it is planned that practically all children shall receive (and possibly most adults) injections of Salk polio vaccine. So the giving and receiving of injections and the lack of nerve injury therefrom ordinarily has become a matter of common knowledge" (p. 444).

A different situation was presented in *Wickoff* v. *James* (1958) 159 Cal.App.2d 664 [324 P.2d 661]. There a sigmoidoscope was inserted up the plaintiff's rectum for the purpose of examining the interior of the large intestine. The court held (p. 669): "We cannot say that it is a matter of common experience that a rent in the intestine does not occur during a sigmoidoscopy in the absence of negligence. Expert testimony would be required. The only evidence introduced in this regard was the statement of Dr. James that a tear is not anticipated or expected. The mere fact that the result is unexpected or not anticipated is not sufficient to invoke the doctrine" (citing *Salgo, supra,* and *Dees* v. *Pace,* 118 Cal.App.2d 284 [257 P.2d 756]).

*Salgo* involved a paralysis resulting from a needle injection of matter into the aorta during an aortographic examination; it was held the aortography was a diagnostic procedure not within the common knowledge of laymen. *Dees* involved a hole in the bladder following a hysterectomy.

In *Lamb* v. *Moore* (1960) 178 Cal.App.2d 819 [3 Cal. Rptr. 507], the court said at page 822: "One cannot say that it is a matter of common knowledge that angulation or a valgus [flat] foot does not occur in the treatment of a bone fracture of the tibia unless there was negligence in the treatment. There was no expert testimony on this point. *This is a matter which is outside the layman's realm of experience*" (emphasis ours).

In the instant case the particular inquiry before us is

whether it can be said to be a fact of common knowledge among laymen that the surgical wound involved herein ordinarily or probably would not have separated subsequently unless someone had been negligent.

The situation is not like that of a needle injection in the arm followed immediately by a "wrist drop," or a sponge left at the site of an operation, or any number of similar situations where it may reasonably be said that a layman would know as a matter of common knowledge that the incident ordinarily or probably would not have occurred absent negligence. We are confronted here with a number of variables which, although part of a layman's store of common knowledge, would have to be included in determining whether an affirmative answer to the inquiry reasonably could be said to be within such layman's "realm of experience." For example, incisions vary in length (12 inches here); there are various sites of incisions (lower abdomen here); there are various circumstances of health and body conditions under which incisions are made; obesity may be a factor (plaintiff was obese, weighed 266 pounds, and was 55 years of age); rates of healing vary with individuals; any surgical wound varies in strength depending upon the time which it has been healing; stresses, whether voluntary or involuntary, may affect the holding power of a sutured surgical wound.

■■ We have concluded that it is not a matter of common knowledge among laymen that a separation of the surgical incision required in the operation known as a resection of the sigmoid colon ordinarily or probably would not have occurred *in the absence of negligence*. We have reached the same conclusion with regard to whether the wearing of a scultetus binder would have prevented the separation.

Plaintiff apparently adopts the same view for the limited purpose of defeating the defense of the statute of limitations which was pleaded by both defendants. The original operation was performed on February 20, 1956. The reclosure operation was performed by defendant doctor on February 28, 1956. Plaintiff left defendant hospital on March 16, 1956. The action was filed on June 25, 1957. The issue was submitted to the jury and it returned a special verdict as to such issue in favor of plaintiff and against both defendants. The following instruction was given to the jury: "[I]f you further find that under the circumstances a reasonable and prudent person in plaintiff's position could not have fully discovered

the cause of his wrongful injuries sooner than plaintiff did; and if you further find that plaintiff discovered the cause of his wrongful injuries within one year prior to June 25, 1957, which is the date the suit was commenced, then if you make such finding, the suit against the defendant Hahnemann Hospital was not barred by the statute of limitations." As to the claim against the defendant doctor, the court instructed: "[I]f you further find that by reason of the premises a reasonably prudent person in plaintiff's position could not have fully discovered the cause of his wrongful injuries sooner than plaintiff did; and if you further find that plaintiff discovered the cause of his wrongful injuries within one year prior to June 25th, 1957, which is the date the suit was commenced, then if you make such findings the suit against the defendant, Dr. Debenham, was not barred by the statute of limitations."

The court instructed on "notice," as follows: "Every person who has actual notice of circumstances sufficiently to put a prudent man upon inquiry as to particular facts has constructive notice as to the fact itself, in all cases, in which by prosecuting such inquiry he might have learned such facts."

To avoid the statute of limitations defense, plaintiff pleaded in an amendment to his complaint, the following: "That it was not until the 20th day of November, 1956, or thereabouts, from conversations with and from conversations between his doctors at the aforementioned Veterans Administration Hospital, that the plaintiff was first able to discover the negligent and careless acts of the defendants; that the plaintiff is not at fault for not having made earlier discovery and that he had no prior actual or presumptive knowledge of facts sufficient to put him on inquiry."

Hence, in order to stay in court, plaintiff took the position, in effect, that it was not a matter of common knowledge that the wound separation which occurred on February 28, 1956, was caused by negligence in the suturing of the wound on February 20, 1956; likewise, that it was not a matter of common knowledge that the hospital was negligent in failing to maintain a scultetus binder around his abdomen. In other words, that only through information obtained from medical doctors on November 20, 1956, some nine months later, did he discover such negligence.

Plaintiff testified that on March 13, 1956, defendant doctor

admitted to him that he had made a mistake in the reclosure operation of February 28, 1956, by using a catheter tube instead of making a colostomy. The doctor denied making the statement and the expert testimony was that the use of the tube conformed to standard practice and illustrated good judgment. However, assuming the admission, it does not aid plaintiff. It could not be evidence of negligence which caused the dehiscence, since it relates to an act which occurred not only after the operation of February 20th but also after the dehiscence occurred on February 28th.

Plaintiff also urges as an admission of fault that defendant doctor reduced his charge from $500 to $355, but the doctor explained that plaintiff's insurance company had allowed plaintiff only $355 and so he accepted this amount as payment in full. Assuming that the reduction of the charge indicated a consciousness of fault, this would not support the giving of an instruction on res ipsa loquitur. This was so held in *Horace* v. *Weyrauch*, 159 Cal.App.2d 833 [324 P.2d 666], where the doctor told the patient that there would be no charges " 'because she [the doctor] did it.' "

The judgment is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.