[Civ. No. 354.    Fifth Dist.    Aug. 31, 1964.]

ELMA SURABIAN, Plaintiff and Appellant, v. WALTER LORENZ, Defendant and Respondent.

James C. Janjigian and Paul Mosesian for Plaintiff and Appellant.

J. Hampton Hoge, Jr., and Herbert Chamberlin for Defendant and Respondent.

STONE, J.—Plaintiff appeals from a judgment entered upon a verdict returned pursuant to an order directing a verdict. The order directing verdict and the verdict being nonappealable, the purported appeal therefrom is dismissed. (Code Civ. Proc., § 963.)

Plaintiff had been a patient of defendant prior to December 11, 1959, when defendant, preparatory to filling a tooth in her lower left jaw, hypodermically administered an anesthetic by a mandibular injection. The anesthetic, ravocaine, in general use by dentists in the community, was purchased from an accredited pharmaceutical concern in individual containers called ''carpules'' which are discarded after use.

Defendant injected ravocaine in plaintiff's mouth with normal results on March 25, May 14, and May 16, but after the December 11 injection plaintiff immediately began to feel

uncomfortable, experiencing a severe headache, a rapid pulse, and a feeling of faintness. Defendant quickly inserted a temporary filling in her tooth and then took her to his recovery room, where she lay down. As her headache did not abate, she had defendant call her husband, who took her to the office of her personal physician. Medication was administered by her physician, additional medication was prescribed, and plaintiff was sent home. Her condition did not improve, and the following morning her physician placed her in a hospital, where she remained three days. Upon her return home, she remained in bed for two weeks, and although she suffered some debilitation she was able to be up. Her gradual recovery was complete in about six months.

The lower jawbone is not porous and anesthesia must be accomplished by injecting an anesthetic solution in the area of an opening in the lower jaw, the "mandibular foramen," through which the nerves from the teeth leave the jawbone and enter the skull. A buccal fat pad covered by the lining or mucous membrane of the mouth lies in a depression near the foramen. The hypodermic needle is inserted through the mucous membrane into the tissue of the pad until it reaches the jawbone, small amounts of the anesthetic being ejected as the needle is inserted. When the needle reaches the bone it is withdrawn slightly and the remaining anesthetic injected into the area of the foramen or nerve center.

The key question on this appeal is whether the court erred in ordering a directed verdict for defendant. Plaintiff contends that under the doctrine of res ipsa loquitur the jury should have been allowed to determine whether defendant explained or met the inference of negligence raised by the doctrine. Plaintiff reminds us at the outset that in determining an appeal from a judgment entered on a directed verdict it is our duty to view the evidence most favorably to plaintiff, to draw all inferences in favor of plaintiff which can be reasonably drawn, and to resolve all conflicts in the evidence in plaintiff's favor. ■ However, in our view the crucial rule affecting this review is that this court must consider all uncontradicted evidence adduced by either party. It appears that plaintiff has neglected to distinguish between a presumption and an inference in relation to an appellate court's duty in passing upon an appeal from a judgment entered pursuant to an order for directed verdict. The distinction was clarified by the Supreme Court in *Leonard* v. *Watsonville Community Hospital,* 47 Cal.2d 509, wherein the court said, at page 517 [305 P.2d 36] : "Accordingly, it is the general rule that a

*presumption* favorable to a plaintiff cannot be so dispelled by the testimony of a defendant given pursuant to [Code Civ. Proc.] section 2055 because a defendant called under that section is not treated as the plaintiff's witness. [Citations.] On the other hand, as we have seen, an *inference* can be dispelled as a matter of law by evidence produced by *either* party.''

With the foregoing language in mind, we turn to plaintiff's argument as to what the evidence reflects. The thrust of her argument is that she made out a prima facie case of res ipsa loquitur because it is common knowledge that a mandibular injection does not ordinarily result in a reaction similar to that suffered by her, unless someone has been negligent. She relies upon *Siverson* v. *Weber*, 57 Cal.2d 834 [22 Cal.Rptr. 337, 372 P.2d 97], in contending that common knowledge may be relied upon to invoke res ipsa loquitur and raise an inference of negligence. ▇ The Supreme Court held, at page 836: ''In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied on both common knowledge and the testimony of expert witnesses.''

In the light of the facts surrounding a mandibular injection of an anesthetic, it is questionable that plaintiff has brought her case within the ''common knowledge'' doctrine. There was no infection, tearing of the tissue, or similar result that courts have held to be within the common knowledge doctrine. Rather, plaintiff suffered a reaction to the anesthetic, ravocaine, one of the drugs of the novocaine family commonly used as an oral anesthetic. We doubt that it is common knowledge whether or not this result rarely occurs.

Were we to suppose that plaintiff has proved a result which in the light of common knowledge rarely occurs, nonetheless plaintiff is precluded from relying upon the res ipsa loquitur doctrine by the rationale of the *Siverson* case, *supra*. ▇ At page 839 of *Siverson*, the Supreme Court said:

''The fact that a particular injury suffered by a patient as the result of an operation is something that rarely occurs does not in itself prove that the injury was probably caused by the negligence of those in charge of the operation. (*Wickoff* v. *James*, 159 Cal.App.2d 664, 669 [324 P.2d 661]; *Salgo* v. *Leland Stanford etc. Board Trustees*, 154 Cal.App.2d 560, 569-571 [317 P.2d 170]; *Dees* v. *Pace, supra*, 118 Cal.App.2d 284, 289 [257 P.2d 756].) Language to the contrary in *Valentine* v. *Kaiser Foundation Hospitals*, 194 Cal.App.2d 282, 287 [15 Cal.Rptr. 26], and *McDonald* v. *Foster Memorial*

*Hospital,* 170 Cal.App.2d 85, 102 [338 P.2d 607], is disapproved.

■ "To permit an inference of negligence under the doctrine of res ipsa loquitur solely because an uncommon complication develops would place too great a burden upon the medical profession and might result in an undesirable limitation on the use of operations or new procedures involving an inherent risk of injury even when due care is used. Where risks are inherent in an operation and an injury of a type which is rare does occur, the doctrine should not be applicable unless it can be said that, in the light of past experience, such an occurrence is more likely the result of negligence than some cause for which the defendant is not responsible."

■ The test of the applicability of res ipsa loquitur as established by *Siverson* is twofold. To prove that the result rarely occurs, standing alone, is not enough. It must also be shown that the result is not an inherent risk of the operation or treatment. Here, three dentists testified that occasionally a mandibular block-type injection of the kind administered by defendant results in a reaction similar to that suffered by plaintiff, and that it occurs in the absence of any negligence by the doctor. One witness, perhaps the best qualified of all who testified on the subject, is a practicing dentist and a member of the teaching staff of the University of California in the Department of Oral Surgery, as well as a guest lecturer at the College of Physicians and Surgeons Dental School in San Francisco. He teaches the technique of anesthetic injections in the mouth, and he testified as follows:

"Q. Do you know the percentage or number through your reading of the literature, articles, Doctor, that patients who have received this drug, Ravocaine, would get a reaction such as a severe headache? A. Literature says that about 3.9% of these people have untoward reactions to these anesthetics, and this is the same as other anesthetics that we use."

There is also uncontradicted evidence that the soft tissue into which the injection is made contains a network of arteries, veins and nerve tissue which are not visible in an ordinary X-ray. The exact location of the fatty pad and the pattern of nerves and bloodvessels within the pad, may vary in perfectly normal mouths. The dentist must rely upon the exterior appearance and the feel of the mandibular foramen area in making the injection. As a result, injection is made with the calculated risk that the needle may penetrate a

bloodvessel and cause a reaction similar to that suffered by plaintiff.

In arguing that the rule of *Siverson* is not applicable, plaintiff confronts us with our own opinion in *Gerhardt* v. *Fresno Medical Group*, 217 Cal.App.2d 353 [31 Cal.Rptr. 633]. As plaintiff points out, we held in *Gerhardt* that the rule of *Siverson* does not necessarily forbid consideration of evidence that an unfortunate result rarely occurs, in determining whether such result is an inherent risk of the operation. We are not embarrassed by *Gerhardt*, however, since the facts of that case are clearly distinguishable from the case at bench. In *Gerhardt* there was a complete absence of evidence that the result suffered by the plaintiff was an inherent risk of the operation. The unfortunate result in *Siverson* was the development of a fistula after a hysterectomy, and the evidence disclosed this to be an inherent risk of the operation. By contrast, in *Gerhardt* all 12 doctors testified that an injury to the spinal accessory nerve, the unfortunate result Mrs. Gerhardt suffered, is not an inherent risk of a removal of a lymph node from the posterior triangle of the right side of the neck. Only one of the 12 doctors had heard of a similar result, and then in just one instance. The medical testimony in the case before us parallels *Siverson*, not *Gerhardt*, in that all of the experts testified that an undesirable reaction similar to that suffered by plaintiff is an inherent risk of an anesthetic hypodermic injection of the kind defendant administered to plaintiff.

It is suggested by plaintiff that this case comes within the *Gerhardt* exception to the rule of *Siverson* because no expert witness had heard of a patient suffering a reaction so severe as did plaintiff. The argument confuses cause and effect. It is not the seriousness of a particular injury that determines the incidence of occurrence of such injuries, just as the severity of an injury does not determine whether it was caused by negligence.

Plaintiff asserts that under the authority of *Seneris* v. *Haas*, 45 Cal.2d 811 [291 P.2d 915, 53 A.L.R.2d 124], the question whether the doctrine of res ipsa loquitur was applicable should have gone to the jury as an issue of fact. However, the expert testimony here as to whether the result suffered by plaintiff was an inherent risk of the treatment administered was not conflicting, as in *Seneris*. In *Seneris* doctors testified both ways on this point, thus raising a question of fact, and it was for the jury to determine which

witnesses to believe. Here, there was no question of fact for the jury to determine. Every doctor testified that the result was an inherent risk, and there was no conflicting evidence. In *Leonard* v. *Watsonville Community Hospital, supra,* the Supreme Court was faced with a situation similar to the one before us, and it held that an order directing a verdict for defendant was proper. At page 515 the court held:

"It is settled that where the evidence raises an inference that a fact exists, and either party produces evidence of the nonexistence of the fact that is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved, the nonexistence of the fact is established as a matter of law. (See *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868].) In these circumstances the inference is dispelled as a matter of law, and, if the fact inferred is necessary to establish an essential element of the plaintiff's case, a nonsuit or directed verdict is proper. (*Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059] [directed verdict]; *Crouch* v. *Gilmore Oil Co., Ltd.,* 5 Cal.2d 330 [54 P.2d 709] [nonsuit]; *Ceranski* v. *Muensch,* 60 Cal.App.2d 751 [141 P.2d 750] [directed verdict]; *Johnston* v. *Black Co.,* 33 Cal.App.2d 363 [91 P.2d 921] [insufficiency of evidence].)" (See *Krause* v. *Apodaca,* 186 Cal.App.2d 413, 419 [9 Cal.Rptr. 10].)

In view of the uncontradicted evidence that the result suffered by plaintiff was an inherent risk of the treatment administered by defendant, plaintiff is precluded from the benefit of the doctrine of res ipsa loquitur under the rule of *Siverson.* The trial court properly granted the motion for a directed verdict.

The order directing verdict and the verdict being nonappealable, the purported appeal therefrom is dismissed. The judgment is affirmed.

Conley, P. J., concurred.

A petition for a rehearing was denied September 25, 1964, and appellant's petition for a hearing by the Supreme Court was denied October 28, 1964.