**Amy G. ROBINSON, Plaintiff and Appellant,**

**v.**

**INTERMOUNTAIN HEALTH CARE, INC., a Utah corporation, dba Latter-Day Saints Hospital; and John Does I through XX inclusive, Defendants and Respondents.**

No. 860063–CA.

Court of Appeals of Utah.

July 21, 1987.

Charles W. Dahlquist, Norman J. Younker, Kirton, McConkie & Bushnell, Salt Lake City, for defendants and respondents.

Jeffrey Weston Shields, Shields, Shields & Holmgren, Salt Lake City, for plaintiff and appellant.

Before JACKSON, GARFF and BILLINGS, JJ.

## OPINION

JACKSON, Judge:

Amy Robinson appeals the summary judgment entered against her, dismissing her medical negligence complaint for injuries from a severe infection allegedly introduced by an injection. We affirm the judgment below.

Under Utah R.Civ.P. 56(c), summary judgment can be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Utah Farm Prod. Credit Ass'n v. Wasatch Bank of Pleasant Grove*, 734 P.2d 904, 905 (Utah 1987); *Barlow Soc'y v. Commercial Security Bank*, 723 P.2d 398 (Utah 1986). Any doubts or uncertainties concerning issues of fact must be construed in favor of the party opposing summary judgment. *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987); *Mountain States Tel. & Tel. v. Atkin, Wright & Miles*, 681 P.2d 1258, 1261 (Utah 1984).

Viewed in this light, the record shows the following events leading up to this lawsuit. On March 18, 1982, Robinson entered respondent LDS Hospital for a routine tonsillectomy because of recurrent tonsillitis. It was performed by her physician, Dr. Elvon Jackson, the next day. During her hospital stay she was given three injections in her left hip, including one of Demerol just before her discharge on March 20. They were administered with prepackaged single-dose needles that were immediately discarded.

Appellant was readmitted through the hospital's emergency room the day after her release, with extreme pain and inflammation at the injection site and serious septic shock (bacterial poisoning of the blood). At the time of her readmission, there were no other clear signs of infection elsewhere in appellant. Because of this, Dr. Jackson, Dr. Harold Cole, the emergency room physician, and Dr. John Burke, respondent hospital's infectious disease consultant, concluded on March 21 that the infection was from clostridia introduced by a needle. On the basis of this diagnosis, she was immediately operated on to remove the infected hip tissue and muscle.

Twenty-four hours later, a laboratory culture of the removed abscess material showed that the infection was caused by the Beta Streptococcus Group A bacterium, the most typical cause of common tonsillitis, not by clostridium. Robinson's throat culture did not test positive for the streptococci. Significantly, however, a fluorescent antibody stain of tissue from her removed tonsil was also positive for Beta Streptococcus Group A on March 22. As part of the hospital's investigation of the incident, throat, hand, and anal cultures were taken on March 23 from the three nurses who had administered preoperative or postoperative injections to Robinson. All were negative for Beta Streptococcus Group A, strongly supporting the elimination of the nurses themselves as transmitters of the infection. Robinson spent three weeks in the hospital recovering from the infection and surgery.

Robinson filed suit in January, 1983, broadly alleging negligent failure to observe customary standards of cleanliness, injection technique, sterilization, and medical procedures. No claim was made that she had been negligently subjected to surgery based on a diagnosis that turned out to be incorrect. Discovery ensued. Appellant was advised of the positive March 22 stain of her tonsil tissue in respondent hospital's June 1, 1983 Answer to Plaintiff's First Set of Interrogatories. Appellant subsequently deposed Drs. Burke, Jackson, and Cole, as well as the hospital's infection control practitioner, Julie Jacobsen.

Respondents filed a motion for summary judgment in March, 1984, based on the supporting affidavits of Dr. Burke and of the nurses who administered injections to Robinson. The nurses averred that the shots had been given in accordance with accepted standards of practice for sterility

and administration of injections. Dr. Burke stated that, based on the tissue stain results, it was probable Robinson's tonsils were infected with Beta Strep Group A when she was first admitted for the tonsillectomy on March 18, 1982. He further opined that the infection probably spread from Robinson's throat to the injection site, either internally through her bloodstream or externally by Robinson's (or someone else's) handling of the injection site. He concluded this made it probable that the infection and resulting injuries were caused by the pre-existing tonsillar infection, not by the injection administration. He also concluded the likelihood of an injection-related infection (presumably caused by a contaminated needle or solution) from a prepackaged, single-lot injection was remote.

Robinson did not file any affidavits in support of her opposition to the Motion for Summary Judgment. Instead, in accordance with Utah R.Civ.P. 56(e), she directed the court to the deposition testimony, asserting that it raised genuine issues of material fact about the most likely source of Robinson's infection and the applicability of the doctrine of res ipsa loquitur, thereby precluding summary judgment. She relied primarily on Dr. Cole's testimony that, on the evening of March 21, 1982, he and Drs. Jackson and Burke agreed it was most likely the infection had been introduced by the needle.

She argued, in the alternative, that, pursuant to the doctrine of res ipsa loquitur, her case did not require expert testimony to contradict Dr. Burke's opinion about the infection's probable source. She claimed hers was the kind of injury that laymen knew did not occur in the absence of negligence. Finally, she argued that, even if she did have to produce expert testimony on this point, she did not have to do so before trial.

The trial judge concluded that res ipsa loquitur was not an appropriate theory of negligence and granted the motion for summary judgment. Accepting respondents' suggestion, he also granted Robinson thirty days to provide an expert witness to establish another theory of negligence. Robinson did not do so, but proceeded with this appeal after entry of a final judgment which dismissed her complaint with prejudice. On appeal, Robinson presents the same basic arguments against summary judgment as she made to the trial court.

In evaluating whether the evidence reveals a genuine issue of material fact about the most likely cause of Robinson's infection, we must take into consideration the eventual standard of proof, at trial on the merits, on each element of her negligence claim. *See, e.g., Weber v. Springville City,* 725 P.2d 1360 (Utah 1986). *See also Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The elements of a negligence action are (1) a duty of reasonable care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of the injury; and (4) the suffering of damages by the plaintiff. *Weber v. Springville City,* 725 P.2d at 1363. In most medical negligence cases a plaintiff must introduce expert testimony to establish the first and second elements, i.e., the standard of care and a breach of that standard. *Nixdorf v. Hicken,* 612 P.2d 348, 352 (Utah 1980). In some exceptional circumstances, the plaintiff is permitted to use the doctrine of res ipsa loquitur to carry the burden of establishing these two elements, because expert testimony would add nothing to common knowledge that the injury was the result of negligence. The evidentiary doctrine establishes an inference of negligence from the circumstances incident to the medical treatment. *Nixdorf v. Hicken,* 612 P.2d at 352. The loss of surgical instruments in patients, as in *Nixdorf,* is a classic example of those exceptional cases.

The mere invocation of the doctrine, however, does not result in its automatic application. In order to rely on res ipsa loquitur, a plaintiff must first establish a sufficient evidentiary foundation to support application of the doctrine and its inference of

negligence. *Id. See Talbot v. Dr. W.H. Groves' Latter-Day Saints Hospital,* 21 Utah 2d 73, 440 P.2d 872 (1968). The circumstances supplying that foundation have been enumerated by the Utah Supreme Court:

> The rule ... is applicable when: (1) The accident was of a kind which, in the ordinary course of events, would not have happened had the defendant used due care, (2) the instrument or thing causing the injury was at the time of the accident under the management and control of the defendant, and (3) the accident happened irrespective of any participation by the plaintiff.

*Moore v. James,* 5 Utah 2d 91, 96, 297 P.2d 221, 224 (1956). *See also Ballow v. Monroe,* 699 P.2d 719, 721 (Utah 1985); *Kusy v. K-Mart Apparel Fashion Corp.,* 681 P.2d 1232, 1235 (Utah 1984). Commenting on the plaintiff's dilemma in making this preliminary foundational showing in a medical malpractice action, the Utah Supreme Court has noted:

> Generally, this requires the introduction of expert medical testimony to establish the fact the outcome is more likely the result of negligence than some other cause. This testimony would be necessary to provide the evidentiary basis from which the jury could conclude the result is more probably than not due to the negligence of the attending physician.

*Nixdorf v. Hicken,* 612 P.2d at 353.

Appellant first claims that a genuine issue of material fact about the most likely source of the infection (and a prima facie showing of the applicability of res ipsa loquitur) was presented by the deposition testimony of Drs. Cole and Jackson. This entire argument is based on a few sentences lifted from those depositions. A reading of the complete transcripts of their testimony plainly shows that their consensus, the night of Robinson's readmission through the emergency room, was that the injections had introduced the infection. At the depositions, however, none of these doctors ever suggested, once the organism Beta Streptococcus Group A was identified, that the needles were the probable or most likely source of infection.

Quite to the contrary, Dr. Cole testified repeatedly that introduction via the needle was only one possible source of the infection. Another possibility was that the streptococci had travelled through Robinson's bloodstream from her infected tonsil and seeded tissue disturbed by the injection process. Dr. Cole had, in fact, informed appellant's counsel of these possible sources in a letter to him before this lawsuit was filed. Dr. Cole declined to give an opinion as to the probability of each possible source of infection, claiming lack of expertise in that area. Significantly, however, he did testify that the discovery, after Robinson's emergency surgery, that the invading organism was Beta Streptococcus Group A made it less likely the infection was introduced by the needle.

Dr. Jackson also testified at his deposition to several possible sources of infection: the needles or solution themselves; internal movement of bacteria from Robinson's tonsils; or bacteria on the skin surface being introduced into the body by a needle or hand contact with the injection site. When asked, he characterized the first possibility as unlikely, but said it would be pure supposition to estimate whether the first possibility was more or less likely than the possibility that streptococci were on Robinson's skin and then "punched in" by the injections. Finally, he admitted that the latter was a known risk of any injection, even if appropriately given as were Robinson's.

The hospital's infectious disease practitioner, Jacobsen, also testified it was possible the bacteria spread from Robinson's infected tonsillar area via her bloodstream. But she considered it more likely spread by Robinson's hand-to-mouth-to-site contact, adding that routine alcohol swabbing of the site prior to injection would be expected to eliminate some but not all of the bacteria colonized on the skin surface.

In short, the deposition evidence before the trial court revealed several *possible* sources of infection. It showed that the doctors initially believed that the needle

was the culprit, but only before they knew the invading organism was also present in the removed tonsil. After that revelation the only possibilities considered *probable* were not the result of any negligent actions on the part of respondents.

Res ipsa loquitur is an evidentiary doctrine aiding in the proof of negligence; it has no bearing on the issue of causation, which must be separately and independently established. As in any negligence action, a legally-recognizable causal link must be established between defendant's act or omission and plaintiff's injury. Absent such a causal relationship, defendant's conduct, negligent or otherwise, gives rise to no liability. Res ipsa loquitur does not relieve plaintiff of this obligation; rather, it permits him, in lieu of linking his injury to a specific act on defendant's part, to causally connect it with an agency or instrumentality, under the exclusive control of the defendant, functioning in a manner which, under the circumstances, would produce no injury absent negligence. However, where the agency or instrumentality is not established to be the cause of plaintiff's injury, or where it is not shown to be under the exclusive control of the defendant, the causal connection is not established, and the inference of negligent conduct giving rise thereto is nullified.

*Anderton v. Montgomery*, 607 P.2d 828, 834 (Utah 1980) (footnotes omitted). *Cf. Weber v. Springville City*, 725 P.2d at 1367.

In addition, there was uncontroverted evidence that Robinson was not infection-free before the injections; her removed tonsils harbored the same type of bacteria eventually found to have invaded her bloodstream and the abscess site on her left hip. Neither the rarity of her infection, whatever the actual source, nor the mere fact of her injury alone compel the conclusion that it must have resulted from respondents' or anyone else's negligence, as appellant strongly urges.

The fact that plaintiff's disability resulted from an uncommon or rare occurrence does not relieve him of the burden of establishing causation. An inference of negligence cannot be permitted solely upon the basis that the plaintiff developed a rare complication while undergoing medical and surgical treatment. The doctrine of res ipsa loquitur has no application unless it can be shown from past experience that the occurrence causing the disability is more likely the result of negligence than some other cause.

*Talbot v. Dr. W.H. Groves' Latter-Day Saints Hosp.*, 21 Utah 2d at 75, 440 P.2d at 873. *See Surabian v. Lorenz*, 229 Cal. App.2d 462, 40 Cal.Rptr. 410, 411–412 (1964); *Chiero v. Chicago Osteopathic Hosp.*, 74 Ill.App.3d 166, 172, 29 Ill.Dec. 646, 654, 392 N.E.2d 203, 211 (1979); *Rohdy v. James Decker Munson Hosp.*, 17 Mich.App. 561, 170 N.W.2d 67, 68 (1969).

This is not a situation in which the outcome of the medical care "so affronts our notions of medical propriety that expert testimony is not required to establish what would occur in the ordinary course of events," allowing negligence to be inferred from the injury alone. *Nixdorf v. Hicken*, 612 P.2d at 353. It is not a matter of common knowledge that infections like Robinson's are most likely a result of someone's negligence. On the contrary, it is common knowledge that bacteria are frequently present on skin and in mouths and that infection can result at the site of any break in the skin, whether due to an abrasion or an injection or a mosquito bite.

The probability that an occurrence was produced by negligence may be established by reference to the common experiences of the community. When, however, the probabilities of a situation are outside the realm of common knowledge, expert evidence may be used to establish the necessary foundational probabilities.

*Ballow v. Monroe*, 699 P.2d at 722.

■ The evidence in this case, even when viewed most favorably to Robinson, does not present sufficient foundation for the application of res ipsa loquitur. There is no expert testimony in the record from which it could reasonably be concluded that Robinson's infection ordinarily would not happen in the absence of negligence. Al-

though she did not have to rule out all other possible non-negligent causes, she did have to offer evidence showing that the balance of probabilities weighed in favor of negligence. *Id. See also Prosser and Keeton on the Law of Torts* § 39, at 248 (W. Keeton 5th ed. 1984).

In order to create a genuine factual dispute on this point, Robinson thus had to come forward with evidence to counter Dr. Burke's affidavit opinion—that non-negligent causes of her infection were probable—with expert testimony to the effect that Robinson's infection most likely resulted from negligence, assuming it was possible to find an expert who could and would make such a statement.[1] The depositions of respondents' doctors relied upon by appellant simply do not do the job. They provide no evidence that Robinson's infection was most likely caused by negligence, notwithstanding what the doctors might have believed on March 21, 1982, before the laboratory test results were received. Since appellant did not submit evidence creating a genuine issue of fact about the most likely cause of her injuries, the trial judge properly proceeded to conclude that respondents were entitled to summary judgment as a matter of law.

We agree that trial courts should be extremely cautious in granting summary judgment for a defendant on the basis that plaintiff has failed to secure expert testimony to support a medical negligence action. *Chiero v. Chicago Osteopathic Hosp.*, 74 Ill.App.3d at 176, 29 Ill.Dec. at 654, 392 N.E.2d at 211. But appellant contends that a plaintiff suing on a theory of res ipsa loquitur is always entitled to a trial on the merits, so that summary judgment is always inappropriate. Such an argument miscomprehends the purpose and application of the doctrine, as well as the pretrial responsibilities of a plaintiff faced with a summary judgment motion. In this regard, we concur in the reasoning of the appellate court quoted in *Chiero:*

> We agree that if there is any sound basis to do so, a trial court should reject summary judgment in this type of case. Where, however, the record indicates that plaintiff has [had] every opportunity to establish his case and has failed to demonstrate that he could show negligent acts or omissions ... [on the part of the] defendant by expert medical testimony, where the issue is clearly one which cannot be determined by laymen alone, summary judgment could be allowed.

*Chiero v. Chicago Osteopathic Hosp.*, 74 Ill.App.3d at 177, 29 Ill.Dec. at 654, 392 N.E.2d at 211 (quoting *Hill v. Durkin*, 58 Ill.App.3d 1003, 1008, 16 Ill.Dec. 372, 376, 374 N.E.2d 1147, 1151 (1978)).

The judgment of the trial court is affirmed. Costs to respondents.

GARFF and BILLINGS, JJ., concur.

---

1. We give no credence to appellant's claim that she was unable to obtain an expert opinion supporting her negligence action without the discarded needles.