Albert John BUTTERFIELD and Angela Butterfield, on Behalf of Tiffany Ruth BUTTERFIELD, Plaintiffs and Appellants,

v.

David OKUBO, Thomas Nickol, and Holy Cross Jordan Valley Hospital, Defendant and Respondents.

No. 880347–CA.

Court of Appeals of Utah.

March 28, 1990.

David Grindstaff (argued), Quintana & Grindstaff, Attorneys for Appellants Salt Lake City, for plaintiffs and appellants.

David W. Slagle (argued), Snow, Christensen & Martineau, Salt Lake City, for Holy Cross Jordan Valley Hosp.

Gary D. Stott, Michael A. Peterson, Curtis Drake (argued), Richards, Brandt, Miller & Nelson, Salt Lake City, for Thomas Nickol.

R. Scott Williams (argued), G. Eric Nielson, Strong & Hanni, Salt Lake City, for David Okubo.

Before DAVIDSON, JACKSON, and LARSON [1], JJ.

1. John Farr Larson, Senior Juvenile Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

OPINION

JOHN FARR LARSON, Senior
Juvenile Judge:

Albert and Angela Butterfield appeal from a summary judgment dismissing this action for wrongful death, which they allege to be due to medical malpractice by the defendants. Because of a lack of evidence in the record concerning proximate cause, we affirm.

The Butterfields' infant daughter Tiffany died at home on December 20, 1984 of sudden infant death syndrome. She was born June 30, 1984. On that day and again on July 16, 1984, Tiffany was examined by Dr. David Okubo, a pediatrician. On two occasions in July and August 1984, the Butterfields noted apparent problems in Tiffany's breathing and took her to the emergency room of Holy Cross Jordan Valley Hospital ("Holy Cross"), where she was examined and treated by Dr. Thomas Nickol, an emergency room physician and general practitioner. Thereafter, the Butterfields placed Tiffany exclusively in the care and treatment of Dr. Monty McClellan, a family practitioner. He examined Tiffany on five occasions in August through mid-December, 1984.

Following his August 16, 1984 examination, Dr. Nickol recommended close observation of Tiffany's breathing with attention to possible cyanosis or blue discoloration. However, neither Drs. Nickol or Okubo nor Holy Cross referred the Butterfields to a physician with more extensive expertise specifically in infant breathing disorders. They also did not recommend the use of home apnea monitoring equipment. The record does not indicate what, if any, care or treatment was provided by Dr. McClellan for Tiffany's breathing problems during the last four months of her life.

After Tiffany's death, the Butterfields sued Drs. Nickol and Okubo and Holy Cross (but not Dr. McClellan) for medical malpractice, filing their complaint on December 15, 1986. On August 25, 1987, the district court held a scheduling conference, after which an order issued stating that "All discovery must be completed, including the filing of depositions[,] by December 11, 1987." On December 11, 1987, the Butterfields moved to extend the discovery deadline in relation to Holy Cross, and on December 23, 1987, in relation to Dr. Nickol. On December 10 and 11, 1987, the defendants filed motions for summary judgment accompanied by affidavits stating in essence that the defendants' treatment of Tiffany had not fallen below the applicable standard of care and was not the cause of her death. The court heard those motions on December 23, 1987. The Butterfields had no expert testimony in the record in their favor until the day before the summary judgment hearing, when they filed an affidavit by Dr. H. Barry Jacobs. They attempted service of the Jacobs affidavit on opposing counsel that evening and/or the next day. The copy intended for Dr. Nickol's counsel was left with a security guard employed at the office building at which counsel works, and Dr. Okubo's counsel could not locate any served copy until after the summary judgment hearing.

The trial court noted the apparent defects in service of the Jacobs affidavit, and seems to have concluded that, with or without the Jacobs affidavit, the Butterfields had failed to establish a prima facie case because no competent expert testimony indicated either a breach of the standard of care or that the defendants' medical treatment proximately caused the child's death. The principal[2] issues presented are there-

---

**2.** The Butterfields also argue that the district court should have granted their motion to extend the time limit for completion of discovery. However, we find no abuse of discretion in the trial court's scheduling of the case. See Utah R.Civ.P. 16(b); 3 J. Moore, *Moore's Federal Practice* ¶ 16.22 at 16–123 (2d ed. 1989). Moreover, since the case was properly dismissed on summary judgment, additional time for discovery

would serve no purpose. The Butterfields were not entitled to delay the summary judgment because they failed to proceed under Utah R. Civ.P. 56(f). *See Cox v. Winters,* 678 P.2d 311, 314 (Utah 1984); *Reeves v. Geigy Pharmaceutical, Inc.,* 764 P.2d 636, 639 (Utah Ct.App.1988); *Downtown Athletic Club v. Horman,* 740 P.2d 275, 278–79 (Utah Ct.1987).

fore (1) whether the Jacobs affidavit is entitled to consideration in ruling on the motion, and (2) whether there is sufficient evidence in the record to create a factual issue about whether the defendants both breached the standard of care applicable to each and thereby proximately caused Tiffany's death.

## Service of the Jacobs Affidavit

As courts have often noted, a party opposing a motion for summary judgment that is supported by affidavits and/or other evidentiary materials "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or ... otherwise ... must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."[3] In this case, therefore, the Butterfields had to introduce evidence supporting those elements[4] of their case that had been effectively challenged by the defendants in moving for summary judgment. A major part of the Butterfields' evidence was the Jacobs affidavit.

The defendants argue that the Jacobs affidavit should not be considered because it was not properly served on their counsel. Axiomatically, an affidavit in opposition to a motion for summary judgment must not merely be filed with the court; it must also be served on opposing counsel no later than the day before the hearing on the motion,[5] to allow them an opportunity to prepare for the hearing. We have previously noted that an affidavit that has not been properly served should not be considered, and the

motion may be resolved without it. *P & B Land, Inc. v. Klungervik*, 751 P.2d 274, 277 (Utah App.1988).

■ In this case, however, the facts relating to the lack of service were not suitably established. The Jacobs affidavit was accompanied by a certificate attesting to proper service. The only evidence to the contrary in the record is the unsworn verbal representations of counsel about the defects in service, representations based in part on hearsay conversations with their office personnel. While we have no reason to question the accuracy of counsel's representations, the Jacobs affidavit was nevertheless the principal feature of the Butterfields' opposition to the potentially dispositive motions for summary judgment. The certificate of service is entitled to be taken at face value, unless admissible evidence shows it to be erroneous. The representations of counsel, though entirely credible as far as they go, are nevertheless not evidence, and therefore do not suffice to establish facts showing fatal deficiencies in the service of the Jacobs affidavit. We therefore consider the Jacobs affidavit in determining whether the Butterfields came forward with sufficient evidence to warrant denial of summary judgment.

## Standard of Care

■ Due to the technical and complex nature of a medical doctor's services, expert medical testimony must ordinarily[6] be presented in order to establish the standard of care by which the doctor's conduct is to be measured and that the injury was proxi-

---

3. Utah R.Civ.P. 56(e); *Busch Corp. v. State Farm Fire & Casualty Co.*, 743 P.2d 1217 (Utah 1987); *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1044 (Utah 1983).

4. Briefly, to recover for medical malpractice, the plaintiff must show that he or she suffered an injury that was actually and proximately caused by an act or omission of the medical professional that fell below the standard of care for that professional's medical field or specialty. *See Robinson v. Intermountain Health Care, Inc.*, 740 P.2d 262 (Utah App.1987); *Hoopiiana v. Intermountain Health Care, Inc.*, 740 P.2d 270 (Utah App.1987).

5. Utah R.Civ.P. 56(c).

6. An exception is made where the physician's error is so plain and simple that it is within the range of ordinary lay knowledge. For example, in *Nixdorf v. Hicken*, 612 P.2d 348 (Utah 1980), a surgeon left a surgical cutting needle inside the plaintiff's body, and the court held that expert testimony on the standard of care was not needed, in essence because everybody knows that a surgeon should not leave inside a sharp, foreign object used to make the incision. In this case, however, whether the defendants should have taken additional steps to prevent future apnea is a factual question not within the range of ordinary lay knowledge.

mately caused by conduct of the doctor that fell below that standard of care. *Anderson v. Nixon,* 104 Utah 262, 139 P.2d 216, 220 (1943); *Chadwick v. Nielsen,* 763 P.2d 817, 821–22 (Utah App.1988); *Martin v. Mott,* 744 P.2d 337, 338 (Utah App.1987); *Robinson v. Intermountain Health Care, Inc.,* 740 P.2d 262, 264 (Utah App.1987). Further, the expert testimony, like the standard of care which is its subject matter, is specific to the particular medical specialty or area of expertise of the defendant. In other words, one physician is not qualified to give an admissible opinion on the treatment provided by another physician, unless the physician giving the opinion is shown to have familiarity with the treating physician's particular area of practice.[7]

■ The expert affidavits submitted by the defendants in moving for summary judgment indicate both that the attesting expert was qualified to render an opinion on the standard of care applicable to the particular defendant about which he was speaking, and that the defendant's treatment of Tiffany did not fall below that standard. The question thus becomes whether Dr. Jacobs also indicated familiarity with the standards of care applicable to the defendants sufficient to warrant consideration of his opinion. In that regard, Dr. Jacobs stated:

1. I am a physician licensed in the State of Maryland and am a Board Certified Surgeon since 1974. I have past experience in Emergency Room care at four hospitals, and Pediatrics, having cared for patients in private practice and hospitals, including the Children's Hospital in Washington, D.C.

. . . .

3. I am familiar with the Standard of Care, applicable in 1984, required in pediatrics and emergency room medicine, as well as hospital responsibility for adequate record keeping and availability of previous records during later follow up care for a related complaint.

Based on those statements, there is reason to question whether Dr. Jacobs' apparently rather eclectic background qualifies him as an expert in all three of the defendants' fields of medical practice. However, our role is not to cross-examine the affidavit by conjecture;[8] rather, we take it at face value, viewing the evidence in the light most favorable to the Butterfields, since they lost the summary judgment motions in the court below.[9] In that light, Dr. Jacobs' representations of his competence are not so patently unfounded or conclusory that they can be wholly disregarded. Because Dr. Jacobs' opinion concerning the standard of care contradicts those of the defendants' experts, it demonstrates the existence of a dispute of material fact, which precludes summary judgment on the question of the standard of care.

## Proximate Causation

■ However, while Dr. Jacobs' criticizes the defendants' treatment of Tiffany, he does not establish the requisite causal link between that treatment and Tiffany's death. Dr. Jacobs opines that the defendants' failure to prescribe home monitoring of Tiffany's breathing, and perhaps also a more generalized inattention to Tiffany's breathing problems, constitute treatment falling below the standard of care. However, those asserted errors occurred in mid-1984, whereas Tiffany died on December 19, 1984, four months after she had been placed in the care of another medical practitioner. The defendants argue that these facts, along with expert opinion, indicate that their treatment of Tiffany did not proximately cause her death. Dr. Jacobs, however, ignores the causation question.

■ The element of proximate causation in a tort case inquires into whether the

---

7. *Burton v. Youngblood,* 711 P.2d 245, 247–48 (Utah 1985); *see also Chadwick,* 763 P.2d at 822.

8. *See Reeves,* 764 P.2d at 639 ("In considering a motion for summary judgment, it is not appropriate for a court to weigh the evidence or assess credibility[.] )"

9. *Branam v. Provo School Dist.,* 780 P.2d 810 (Utah 1989); *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 636 (Utah 1989); *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 299 (Utah 1987).

defendant could, under the circumstances, reasonably have foreseen that the harm of which the plaintiff complains would result from the defendant's breach of the standard of care. *See Jackson v. Hicks*, 738 P.2d 1037, 1039 (Utah 1987); *Mitchell v. Pearson Enters., Inc.*, 697 P.2d 240, 245–47 (Utah 1985); *Williams v. Melby*, 699 P.2d 723, 728–29 (Utah 1985). Without proof of proximate cause, the plaintiff cannot recover in tort. *Dowell Div. of Dow Chemical U.S.A. v. Del–Rio Drilling Programs, Inc.*, 761 P.2d 1380, 1384 (Utah 1988); *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1082–83 (Utah 1985).

When proximate causation was called into question by the defendants in moving for summary judgment, it was incumbent on the Butterfields to come forward with evidence of a causal link between the purported malpractice and the harm for which they seek damages.[10] However, there is nothing in the Jacobs affidavit to indicate that the defendants' medical treatment proximately caused Tiffany's death, or even caused her death at all. From the record, we cannot exclude the possibility that the defendants may have erred, but fortuitously, their error was not a cause, or a substantial enough cause, of Tiffany's death.[11] The allegation of causation, a critical element of the Butterfields' prima facie case, thus remains unsubstantiated.

### Conclusion

We conclude that the Jacobs affidavit was before the court, absent evidence indicating that it was not properly served. That affidavit, though conclusory, nevertheless introduces enough apparently competent expert testimony to create a factual dispute on the question whether the defendants' treatment of Tiffany Butterfield fell below the applicable standards of care. However, even viewing the facts in the light most favorable to the Butterfields, there is a dearth of evidence in the record to counter the defendants' assertions that their treatment of Tiffany did not proximately cause her death.

We therefore affirm the district court's order of dismissal.

DAVIDSON and JACKSON, JJ., concur.

---

**10.** *Hunt v. Hurst*, 785 P.2d 414, 415–16 (Utah 1990).

**11.** *Cf. Reeves*, 764 P.2d at 642.