[Civ. No. 9204.   Third Dist.   Apr. 24, 1958.]

ODETTE WICKOFF et al., Appellants, v. HAROLD E. JAMES et al., Respondents.

White & White, Arlington C. White, M. E. White and Leonard A. Worthington for Appellants.

Peart, Baraty & Hassard, Robert D. Huber, Clark, Heafey & Martin, Edwin A. Heafey and Richard G. Logan for Respondents.

SCHOTTKY, J.—Plaintiffs above named, husband and wife, commenced an action against defendants to recover damages for alleged malpractice. At the conclusion of plaintiffs' evidence the court granted defendants' motion for a nonsuit, and judgment was entered thereon. Plaintiffs made

a motion for a new trial, which was denied, and plaintiffs then made a motion to vacate and set aside the judgment of nonsuit and to declare the judgment null and void. The latter motion was made upon the ground that Judge King was disqualified to sit and act in the case. Both the motion for a new trial and the motion to vacate the judgment were heard by a judge other than Judge King and were denied. Plaintiffs have appealed from the judgment of nonsuit and from the order denying their motion to vacate the judgment.

On January 6, 1954, Mrs. Wickoff, who at the time was 39 years of age, entered the St. Helena Sanitarium and Hospital for the purpose of having a rectosigmoid polyp, a wartlike growth, removed from the lower portion of the large intestine adjacent to and immediately above the rectum. The operation was performed by Dr. James who, it is admitted, was an employee of the hospital. After an operation such as this it is customary to examine the situs of the polyp for the purpose of ascertaining whether or not the entire polyp has been removed. Accordingly, prior to leaving the hospital on January 15, 1954, Mrs. Wickoff was taken to Dr. James' office for the purpose of undergoing the examination. To examine the situs Dr. James attempted to insert a sigmoidoscope, $\frac{3}{4}$ inch in diameter, up the patient's rectum. The examination was unsuccessful because Dr. James was unable to insert the scope without causing great pain to Mrs. Wickoff. It was then decided that the examination would be performed at a later date while Mrs. Wickoff was under an anesthetic. Mrs. Wickoff was then discharged from the hospital. On January 20, 1954, Mrs. Wickoff returned to the hospital for the purpose of undergoing the sigmoidoscopy. She was given a general anesthetic and then a sigmoidoscope was inserted up her rectum to the 15 centimeter level (5.90 inches) without difficulty. At this point the obdurator was removed because Dr. James desired to pass the scope under direct vision. In attempting to advance the sigmoidoscope under direct vision slight difficulty was encountered and upon visual examination it was noted through the scope that a loop of the small intestine was visible. A diagnosis of accidental perforation of the sigmoid wall was made. Mrs. Wickoff was immediately taken to surgery where an abdominal repair was performed. Immediate action was required because of the danger of peritonitis.

Mr. Wickoff testified: ''When Dr. James and Dr. McGreane came out of the operating room, I watched them, because I was very anxious to know exactly what happened, and they

walked up the hallway. Dr. James still had his apron on which was all full of blood, and he had his mask hanging down over his chin . . . and as he got within a matter of oh, 10, 15 feet from me, he shrugged his shoulders and says, 'Boy, I sure made a mess out of things today, didn't I, Warren?' I said, 'Dr. James, what in the world happened?' He said, 'Well, by inserting' his scope 'in your wife's rectum, I busted the intestine.' ''

Dr. James was called as a witness by plaintiffs under the provisions of Code of Civil Procedure, section 2055. He testified that in cases such as Mrs. Wickoff's the usual follow-up procedure is by sigmoidoscopic examination, if possible, or X-ray; that at the time Mrs. Wickoff was to leave the hospital after the removal of the polyp an attempt to examine her by sigmoidoscopic process in Dr. James' office was unsuccessful due to pain; that he had performed many of such sigmoidoscopic examinations and that it was routine in his office; that it was then decided to perform the process under anesthesia; that sigmoidoscopy is usually an unpleasant procedure; that a tear of the bowel is not an expected or anticipated thing; that he was totally unaware that the bowel had been torn until ''it was noted that a loop of the small bowel was visible''; and that unless there was a tear in the large bowel a portion of the small bowel could not come through and be visible while examining the large bowel; that it was a matter of a few minutes after the scope entered through the sphincter muscle before he was aware that he had torn the intestine; that thereafter he mentioned it to the persons in the operating room; that the tear was so unexpected that it was necessary to ''verify this thing.''

Appellants contend that the evidence establishes a prima facie case of negligence on the part of respondent James and that the court erred in granting respondents' motion for a nonsuit. They contend further that upon the doctrine of res ipsa loquitur they were entitled to have the case submitted to the jury.

We have concluded that appellants did establish a prima facie case of negligence on the part of respondent James and that the judgment of nonsuit must be reversed.

In considering whether or not a judgment of nonsuit was proper, an appellate court must ''resolve every conflict in their testimonies in favor of plaintiff, consider every inference which can reasonably be drawn and every presump-

tion which can fairly be deemed to arise in support of plaintiff, and accept as true all evidence adduced, direct and indirect, which tends to sustain plaintiff's case." (*Lashley.* v. *Koerber,* 26 Cal.2d 83, 84 [156 P.2d 441].) █ In any malpractice case negligence on the part of the doctor will not be presumed, it must be proved except in those cases where res ipsa loquitur is applicable. █ The expert testimony which will establish plaintiff's prima facie case may be that of the defendant, and an extra judicial admission is sufficient to do this. However, in order for an extrajudicial admission to be sufficient it must be an admission of negligence or lack of skill ordinarily required for the performance of the work undertaken. (*Lashley* v. *Koerber, supra.*)

█ The only statement of Dr. James' which could be construed as an admission of negligence is the statement, "Boy, I sure made a mess of things. . . ." Webster's New International Dictionary (2d ed.) gives one of the definitions of the word mess as "A confused or disagreeable mixture of things: a hodgepodge. Hence, a situation resulting from blundering or from misunderstanding; a muddle; a botch." Roget's Thesaurus (Crowell Publishing Co., 1946), under the heading "unskillfulness," gives the phrase "make a mess of." Partridge, A Dictionary of Slang and Unconventional English (4th ed., 1951), states the phrase "make a mess of" means bungle. The Oxford English Dictionary defines the phrase "to make a mess of" as bungle. All these definitions indicate that one of the meanings of the phrase is bungle or botch, which in turn connotates a job done in an unskillful manner.

Respondents argue that even if the admissions of Dr. James were significant they were not sufficient to prevent a nonsuit in the instant case, and that these admissions do not support an inference of negligence. They state further that even if they are wrong in this respect, appellant still cannot prevail because such evidence has been characterized as the most unreliable and uncertain evidence that can be produced. However, we are here concerned with the question of whether or not a nonsuit should have been granted, and in such a case a plaintiff is entitled to every favorable inference that may reasonably be drawn from the evidence. What inferences were to be drawn from said statements of Dr. James in the light of the facts and circumstances shown by the evidence was a question of fact to be determined by the jury and we believe that the court erred in determining as a matter of law that no inference of negligence could be drawn from the evidence.

We think that the jury could infer from the statement of Dr. James that in inserting the scope he did not use the degree of care ordinarily exercised by other doctors of good standing in the community, and, as a result of the lack of care, Mrs. Wickoff's bowel was torn. Under such circumstances it was error to grant a nonsuit.

■ We are unable to agree with appellants' contention that on the doctrine of res ipsa loquitur, standing alone, they were entitled to have the case submitted to the jury. The doctrine of res ipsa loquitur would not apply in the instant case unless it was shown that the occurrence was one that does not ordinarily occur in the absence of negligence. We cannot say that it is a matter of common experience that a rent in the intestine does not occur during a sigmoidoscopy in the absence of negligence. Expert testimony would be required. The only evidence introduced in this regard was the statement of Dr. James that a tear is not anticipated or expected. The mere fact that the result is unexpected or not anticipated is not sufficient to invoke the doctrine. (*Salgo* v. *Leland Stanford etc. Board of Trustees,* 154 Cal.App.2d 560 [317 P.2d 170]; *Dees* v. *Pace,* 118 Cal.App.2d 284, 289 [257 P.2d 756]; Note, 9 Stanf.L.Rev., p. 731.)

Appellants contend also that the court erred in admitting certain hospital records into evidence. However, in view of the fact that we have concluded that the judgment of nonsuit must be reversed it is unnecessary to discuss this contention.

### Appeal from Order Denying Motion to Vacate the Judgment of Nonsuit

· ■ It appears from the record that at the time plaintiffs filed their motion for a new trial they also filed a statement of grounds of disqualification of Judge King and objection to his hearing the motion for a new trial. The grounds stated were that Judge King was disqualified for the following reasons:

"He is disqualified to sit or act on the ground that he was at one time retained and employed as attorney and counsel for the defendant St. Helena Sanitarium and Hospital, a corporation, in matters involving one or more of the same issues involved in the above-entitled cause."

· Following the denial of the motion for a new trial, which motion was heard by Judge Homer Patterson, plaintiffs filed a motion to vacate and set aside the judgment of nonsuit and to declare the same null and void. The latter motion was made

upon the ground that Judge King was disqualified to sit in the case for the reason:

"That he was at one time retained and employed as attorney and counsel for the defendant St. Helena Sanitarium and Hospital, a corporation, in matters involving one or more of the same issues involved in the above-entitled cause."

Section 170 of the Code of Civil Procedure sets forth the grounds of disqualification of a judge to sit in any action or proceedings, and appellants rely upon subsection 4 which reads:

"When, in the action or proceeding, or in any previous action or proceeding involving any of the same issues, he has been attorney or counsel for any party; or when he has given advice to any party upon any matter involved in the action or proceedings; or when he has been retained or employed as attorney or counsel for any party within two years prior to the commencement of the action or proceeding."

Appellants state that their motion to vacate the judgment of nonsuit "was not opposed by affidavit or other evidence of record denying the disqualification of said Judge." They state also that Judge King conceded his disqualification in the matter. However, the record merely shows that the clerk of the court informed appellants' counsel that Judge King had disqualified himself from hearing the motion for a new trial and the matter of his disqualification and that another judge was assigned to hear those matters.

It is of course a fundamental rule that no judge should preside in a case in which he is not wholly free, disinterested, impartial and independent. The various grounds of disqualification have been set out in great detail in our Code of Civil Procedure. A party who makes a motion to declare a judge disqualified, and particularly a party who seeks to have a judgment declared void on the ground that the judge was disqualified, should allege and prove facts which clearly show that such disqualification existed. The instant case was an action against defendants Dr. James and St. Helena Sanitarium and Hospital for damages for alleged malpractice. Appellants' only stated ground of disqualification is a statement that Judge King was *at one time* retained and employed as attorney for defendant St. Helena Sanitarium and Hospital in matters involving one or more of the same issues involved in the instant action. The only issues involved in the instant action would be the issues of whether or not defendants were liable in damages for malpractice, and we

believe that appellants have neither alleged nor proved facts which show that any disqualification existed. The most that may be inferred from the very general allegations is that *at one time* (how far in the past does not appear) Judge King may have advised defendants in some matter relating to malpractice. We do not believe that appellants made a sufficient showing to justify the vacating of the judgment of nonsuit upon the ground that Judge King was disqualified.

The order denying the motion to vacate the judgment of nonsuit is affirmed. The judgment of nonsuit is reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 22, 1958, and the petition of respondent Harold E. James for a hearing by the Supreme Court was denied June 17, 1958.