[No. B188779. Second Dist., Div. Four. Feb. 13, 2007.]

NORTH BEVERLY PARK HOMEOWNERS ASSOCIATION, Plaintiff and Respondent, v.
JEANNETTE A. BISNO et al., Defendants and Appellants.

764

COUNSEL

Burke, Williams & Sorensen, James B. Hicks; Mintz & Werner and Marshall G. Mintz for Defendants and Appellants.

Wolf, Rifkin, Shapiro & Schulman, Marc E. Rohatiner and Denise M. Parga for Plaintiff and Respondent.

OPINION

**WILLHITE, Acting P. J.—**

## INTRODUCTION

Defendants Jeannette and Robert Bisno (the Bisnos) appeal from an order denying their postjudgment motion to dissolve a permanent injunction.[1] This appeal is their second in a lawsuit brought against them by plaintiff North Beverly Park Homeowners Association (the Association).

---

[1] An order after judgment denying a motion to dissolve a permanent injunction is appealable under Code of Civil Procedure section 904.1, subdivision (a)(1) and (6). (See *Crespin v. Shewry* (2004) 125 Cal.App.4th 259, 264, fn. 3 [22 Cal.Rptr.3d 696].)

Beginning in 1999, the Bisnos planned to build a home in North Beverly Park, a luxury community in Beverly Hills. The Association's architectural review committee disapproved certain aspects of the Bisnos' plans, including the design of their front gates and a particular sculpture they intended to place in their motor court. In June 2002, the Association sued the Bisnos for breach of covenants, nuisance, and trespass. As here relevant, the Association sought an injunction preventing the Bisnos from installing the front gates and sculpture. The trial judge initially granted a preliminary injunction prohibiting installation of the sculpture and gates. Ten months later, on the Bisnos' motion, the court dissolved the injunction. The Bisnos then installed the sculpture and gates.

From March 8 through March 26, 2004, the trial judge held a nonjury trial on the Association's complaint. On April 29, 2004, the judge entered a permanent injunction requiring the Bisnos to move the sculpture to a spot not visible from the street and to remove the gates. The injunction further restrained the Bisnos from installing any gates or items in their front motor court without permission from the architectural review committee.

The Bisnos appealed. In an unpublished opinion, we affirmed the judgment.[2] The Bisnos' petition for review to the California Supreme Court was denied, and the remittitur issued on October 13, 2005.

Following issuance of the remittitur, the Bisnos sought to avoid the permanent injunction by filing a statement of disqualification against the trial judge under Code of Civil Procedure section 170.1, subdivision (a)(7), on the ground that he suffered an impairment of memory preventing him from recalling the trial testimony.[3] The Bisnos also filed a motion to dissolve the permanent injunction under Civil Code section 3424, alleging that the judge's impairment required dissolving the injunction in the interests of justice. In support of this motion, the Bisnos attempted to use, inter alia, the trial judge's failure to respond to their statement of disqualification as evidence that the trial judge consented to disqualification, requiring that their allegations be deemed true.

The matter was assigned to a different judge, whom we shall refer to, for clarity, as the motion judge. The motion judge denied the motion to dissolve the permanent injunction.

---

[2] *North Beverly Park Homeowners Assn. v. Bisno* (June 21, 2005, B175173) [nonpub. opn.].

[3] All undesignated section references are to the Code of Civil Procedure.

The Bisnos now appeal from the order denying their motion. In response to their various contentions, we hold that the statutory procedure for disqualification of judges for cause (§ 170.3) does not apply to final judgments. Therefore, the trial judge's failure to answer or strike the Bisnos' statement of disqualification, which was filed and served after final judgment, does not constitute consent to retroactive disqualification, and does not require that the allegations of the statement of disqualification be deemed true. Further, we find the primary decision on which the Bisnos rely, *Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415 [285 Cal.Rptr. 659] (*Urias*), to be distinguishable (it involved a judgment not yet final), and conclude that its reasoning does not apply to require application of the statutory disqualification procedure to final judgments. Finally, we conclude that even if the analysis of *Urias* were to apply here, the Bisnos' statement of disqualification failed to allege sufficient facts to compel the trial judge's disqualification.

Concerning the Bisnos' motion to dissolve the permanent injunction, we assume (without deciding) that a judge's disability may be a basis in equity under Civil Code section 3424 to dissolve a permanent injunction that is the subject of a final judgment. Nonetheless, we conclude that the Bisnos failed to meet their burden of proof, and that the motion judge did not abuse his discretion in refusing to dissolve the injunction and in denying the Bisnos' request for discovery of the trial judge's mental condition. Therefore, we affirm the judgment.

## DISCUSSION

### I. *The Statement of Disqualification*

The remittitur in the prior appeal issued on October 13, 2005. Approximately six weeks later, on November 30, 2005, the Bisnos filed in the trial court a verified "Statement of Disqualification." The document identified the trial judge by name, as well as his department number, and stated: "Trial Date: March 8, 2004." However, nowhere did it clearly state that it was seeking the trial judge's retroactive disqualification. Nor did it state that it was seeking to have the final judgment vacated.

In the body of the document, the Bisnos' attorney purported to "object to the hearing of the above matter by the [named trial judge], on the grounds that the judge is disqualified from hearing and determining this matter" under section 170.1. The stated ground was that the judge "is unable to properly perceive the evidence or is unable to properly conduct the proceeding because of a permanent or temporary physical impairment in that [he] is suffering

from an impairment of memory which prevents him from recalling the testimony adduced at trial." Although the statement did not identify the particular statutory ground for disqualification, it is apparent that it referred to section 170.1, subdivision (a)(7), which provides that a judge is disqualified if "[b]y reason of permanent or temporary physical impairment, the judge is unable to properly perceive the evidence or is unable to properly conduct the proceeding."

In support of this ground, the Bisnos' attorney alleged the following supporting facts: "In instances subsequent to the trial of this action, [the judge] has exhibited to other lawyers a lack of memory and concentration while he was on the bench. I now believe that [he] was suffering from such lack of memory and concentration while acting as the trier of fact in this case and his physical impairments, while existing at the time of trial, became more manifest subsequent to the trial. I am informed and believe that [the trial judge's] impairments reached the point where he was put on administrative leave by the Superior Court. I first became concerned about [the trial judge's] physical impairments on or about October 17, 2005 through a conversation with another lawyer who knew that I had a case before [the judge] and himself had information about [the judge] having been placed on administrative leave and the reasons therefore. I subsequently followed up and confirmed that information with another lawyer known to me who also had a case before [the judge] and who informed me of his personal observations of [the judge's] physical impairments which manifested themselves in a lack of memory and concentration while on the bench."

The Bisnos personally served the statement of disqualification on the trial judge at his residence on December 6, 2005. The judge was then on leave from the court, apparently based on his medical condition, and never responded to the statement of disqualification.

Relying on *Urias, supra,* 234 Cal.App.3d 415, and section 170.3, subdivision (c)(4), the Bisnos argue that the trial judge's failure to respond constituted a consent to disqualification, and that the statement of disqualification must be deemed true. Therefore, according to the Bisnos, the judge was disqualified based on his impairment of memory during the trial. As a result, the judgment must be vacated and the permanent injunction dissolved.

■ California law holds that rulings by a judge later found to be disqualified are either "void" or "voidable"—the precise label depending on which line of authority the particular court decides to follow. (See *Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 776, 779–780 [37 Cal.Rptr.3d

718], & cases cited therein [noting conflict, and concluding that the decision in *Giometti v. Etienne* (1934) 219 Cal. 687, 688–689 [28 P.2d 913] compels lower courts to find rulings by disqualified judge void rather than voidable]; cf. 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, §§ 91–95, pp. 127–135 [advocating view that because court has subject matter jurisdiction, disqualified judge's rulings are voidable rather than void].) The distinction is important when dealing with a final judgment, because "a party seeking to set aside a voidable judgment or order must act to set aside the order or judgment before the matter becomes final" (*Christie, supra,* 135 Cal.App.4th at p. 780), whereas describing the judgment as void—meaning the court lacks subject matter jurisdiction—suggests that the judgment is subject "to *collateral attack* at any time," a result Witkin accurately describes as "highly undesirable" (2 Witkin, *supra,* § 93, p. 131). Whether a judgment rendered by a disqualified judge is considered void or voidable, the issue of disqualification must be raised at the earliest reasonable opportunity after the party becomes aware of the disqualifying facts. (*Urias, supra,* 234 Cal.App.3d at p. 425.)

Of course, the instant case involves a final judgment. Trial was held (with no mention of the judge's purported incapacity), and judgment was entered by the trial court. On the Bisnos' appeal, we affirmed. The Bisnos' petition for review to the California Supreme Court was denied, and the remittitur issued. Thus, the judgment of the trial court is final for all purposes. (See 9 Witkin, *supra,* Appeal, § 728, pp. 758–759; *id.,* § 731, pp. 761–762; *id.,* § 733, pp. 762–763.)

Without discussion, the Bisnos simply assume that the statutory procedure for disqualification of judges for cause set forth in section 170.3 applies to final judgments, and that judges must respond accordingly to statements of disqualification filed after final judgment or risk automatic disqualification and the vacating of their judgment. However, no California decision has involved an attempt to use the statutory disqualification procedure to vacate a final judgment on the ground of the trial judge's disqualification. Some decisions involve an attack on a nonfinal judgment by a separate action in equity; others, a direct attack on such a judgment by a motion to vacate the judgment, or a statement of disqualification under the statutory disqualification scheme. But none of these decisions approves use of the statutory procedure to retroactively disqualify the trial judge so as to attack a final judgment.[4] Indeed, the language of the current disqualification statutes makes clear that the procedural scheme is directed at pending proceedings.

---

[4] In *Cadenasso v. Bank of Italy* (1932) 214 Cal. 562 [6 P.2d 944], the California Supreme Court entertained a separate action in equity to set aside a nonfinal judgment based on the trial judge's conflict of interest (stock ownership in the bank which had prevailed as plaintiff in the earlier case). The court expressly declined to express an opinion on whether the action could have been brought had the judgment been final. (*Id.* at p. 569.) Relying on its earlier decision

■     Section 170.3, subdivision (a)(1), provides in relevant part that "[i]f a judge determines himself or herself to be disqualified, the judge shall notify the presiding judge . . . and shall not further participate *in the proceeding* [with exceptions not here relevant], unless his or her disqualification is waived by the parties as provided in [section 170.3,] subdivision (b)." (Italics added.) The word "proceeding" is defined as "the action, case, cause, motion, or special proceeding *to be tried or heard by the judge*." (§ 170.5, subd. (f), italics added.) Thus, section 170.3, subdivision (a)(1), contemplates a judge disqualifying himself or herself from pending proceedings—those *to be* tried or heard—not from proceedings in which a final judgment has been entered.

Under the statutory scheme, a party files a statement of disqualification when "a judge who should disqualify himself or herself refuses or fails to do so." (§ 170.3, subd. (c)(1).) Further, the party's statement of disqualification

---

in *Lindsay-Strathmore I. Dist. v. Superior Ct.* (1920) 182 Cal. 315, 332 [187 P. 1056], the court held only that "the plain inference from [*Lindsay-Strathmore*] is that objection to . . . the trial judge by reason of his interest in the subject matter of the suit may be made at any time before the judgment becomes final." (*Cadenasso, supra*, 214 Cal. at p. 569.) Other California decisions have similarly considered attempts to disqualify the trial judge and vacate nonfinal judgments. (See *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 637–638, 656–659 [49 Cal.Rptr.2d 620] [separate action, filed while underlying judgment was on appeal, to vacate the judgment on the ground that the judge was disqualified for bias; action dismissed under Code Civ. Proc., § 425.16 as SLAPP (strategic lawsuit against public participation) suit]; *Urias, supra*, 234 Cal.App.3d at pp. 419–426 [statement of disqualification under § 170.1, filed after entry of summary judgment, seeking to vacate judgment based on judge's prior representation of defendant; disqualification of judge, and vacating of judgment, affirmed]; *Valvo v. University of Southern California* (1977) 67 Cal.App.3d 887, 890 [136 Cal.Rptr. 865] [motion to vacate judgment during pendency of appeal on the ground the trial judge had financial interest in case and was biased; denial affirmed in the absence of facts showing the judge was disqualified]; *Tatum v. Southern Pacific Co.* (1967) 250 Cal.App.2d 40, 40–43 [58 Cal.Rptr. 238] [motion to vacate judgment after trial judge disclosed stock ownership in defendant railroad; disqualification of judge, and vacating of judgment, affirmed]; *Muller v. Muller* (1965) 235 Cal.App.2d 341, 342–346 [45 Cal.Rptr. 182] [motion to vacate default judgment on the ground the judge previously represented an unrelated party in prior litigation involving parties to the present suit; denial of motion affirmed for, inter alia, failure to establish the disqualification and failure to raise the issue at earliest practicable opportunity]; *Wickoff v. James* (1958) 159 Cal.App.2d 664, 670–671 [324 P.2d 661] [motion to vacate judgment of nonsuit on the ground the trial judge was disqualified for having once served as attorney for defendants; denial of motion to vacate affirmed for failure to allege and prove facts which clearly show such disqualification existed]; cf. *Christie v. City of El Centro, supra*, 135 Cal.App.4th at pp. 776–780 [after grant of nonsuit, but before judgment, motion for new trial and § 170.1 challenge filed based on trial judge having discussed case with another judge who had been disqualified by a § 170.6 challenge; grant of new trial affirmed]. See also Cal. Forms of Pleading and Practice (Matthew Bender 2006) § 317.35[2], p. 317-45 [noting uncertainty as to whether California law permits vacating final judgment on the ground of the judge's disqualification].)

"object[s] to the hearing or trial *before the judge*," not to the hearing or trial *previously* before the judge, in which the judgment is now final. (§ 170.3, subd. (c)(1), italics added.)

■ The disqualification statutes expressly cover the situation in which the "grounds for disqualification are first learned of or arise after the judge has made one or more rulings in a proceeding, *but before the judge has completed judicial action in a proceeding*." (§ 170.3, subd. (b)(4), italics added.) In that situation, the judge "shall, unless the disqualification be waived, disqualify himself or herself, but in the absence of good cause the rulings he or she has made up to that time shall not be set aside by the judge who replaces the disqualified judge." (§ 170.3, subd. (b)(4).) The scheme also has a procedure when "a statement of disqualification is filed after a trial or hearing has commenced by the start of voir dire, by the swearing of the first witness or by the submission of a motion for decision." (§ 170.4, subd. (c)(1).) Under this procedure, "the judge whose impartiality has been questioned may order the trial or hearing to continue, notwithstanding the filing of the statement of disqualification[,] . . . and if it is determined [by another judge] that the judge is disqualified, all orders and rulings of the judge found to be disqualified made after the filing of the statement shall be vacated." (§ 170.4, subd. (c)(1).) ■ The statutory scheme thus has procedures applicable before judicial action is completed and when a statement of disqualification is filed midtrial or midhearing. However, it does not have a procedure applicable when the issue of disqualification is first raised after final judgment—a clear indication that the Legislature never contemplated applying the statutory disqualification procedure in such a circumstance.

■ It is in the context of the statutory procedure as a whole that the judge's duty to answer or strike a statement of disqualification must be understood. (See *Glassman v. McNab* (2003) 112 Cal.App.4th 1593, 1600 [6 Cal.Rptr.3d 293] [statute must be construed in the context of the statutory scheme, with an eye to harmonizing the various parts].) The judge's option to answer (or to formally consent to disqualification) is contained in section 170.3, subdivision (c)(3). That subdivision provides that "[w]ithin 10 days after the filing or service [of the statement of disqualification], whichever is later, the judge may file a consent to disqualification . . . or the judge may file a written verified answer admitting or denying any or all of the allegations contained in the party's statement and setting forth any additional facts material or relevant to the question of disqualification." The option to strike the statement of disqualification arises under section 170.4, subdivision (b), which provides that the judge "may order [the statement] stricken" if it is untimely or fails to disclose grounds for disqualification.

The automatic disqualification provision of section 170.3, subdivision (c)(4), on which the Bisnos rely, provides that "[a] judge who fails to file a consent or answer within the time allowed *shall be deemed to have consented to his or her disqualification . . . .*" (Italics added.) Further, as the Bisnos note, it is generally stated that if the judge fails to answer or strike a statement of disqualification, the facts alleged in the statement must be deemed to be true. (See *Urias, supra*, 234 Cal.App.3d at p. 424.)

■ But automatic disqualification under section 170.3, subdivision (c)(4), and the related rule that facts alleged in the statement of disqualification are deemed true if the judge does not respond, do not exist outside the statutory procedure as a whole. The statutory procedure clearly contemplates the judge's responding to statements of disqualification filed in pending proceedings, not those filed after final judgment. Thus, to apply the automatic disqualification provision to disqualify a judge for failing to respond to a disqualification statement filed after final judgment would be to apply the provision beyond its intended use.

■ By its terms, therefore, the procedural scheme of the disqualification statutes does not apply to statements of disqualification filed after final judgment. Hence, the trial judge's failure to answer or strike the Bisnos' statement of disqualification cannot be deemed consent to disqualification under section 170.3, subdivision (c)(4), and cannot require that the allegations in the statement be deemed true.

The Bisnos' reliance on *Urias, supra*, 234 Cal.App.3d 415, is misplaced. There, the trial judge granted the defendant's motion for summary judgment, and entered judgment for the defendant. The plaintiff then filed a series of statements of disqualification requesting that the judge be disqualified, and that his ruling on summary judgment be voided. The stated ground was that the judge was disqualified under section 170.1, subdivision (a)(2), because the judge's former law firm had represented the defendant in prior litigation for the past 10 years. (234 Cal.App.3d at p. 419.) The trial judge did not respond to any of the requests for disqualification, nor did he strike them. (*Ibid.*) The issue of disqualification was assigned to a different judge, who ruled under section 170.3, subdivision (c)(4), that the challenged judge had consented to disqualification by failing to respond.

The Court of Appeal affirmed the challenged judge's disqualification. First, the court held that by failing to respond to the statement of disqualification, the judge consented to disqualification under section 170.3, subdivision (c)(4), for "failing to respond to an allegedly untimely and legally insufficient statement of disqualification." (*Urias, supra*, 234 Cal.App.3d at p. 420, italics omitted.) Next, the court considered whether the summary

judgment had to be reversed in light of the judge's subsequent disqualification. (*Id.* at p. 422.) The court noted that "the disqualification statutes do not prescribe a remedy for this situation where the judge is found to be disqualified after judgment is entered, and the only ruling in issue is a summary judgment which disposed of all the issues in the case." (*Id.* at p. 423.) Nonetheless, the court referred to earlier decisions under former disqualification statutes permitting the vacating of a judgment on the basis that the judge who rendered it was later found to be disqualified. (*Ibid.*) Among other decisions, the court referred to *Cadenasso v. Bank of Italy, supra,* 214 Cal. at page 569, and observed that the court in *Cadenasso* stated that a challenge to " 'the trial judge by reason of his interest in the subject matter of the suit may be made at any time before the judgment becomes final' but expressed no opinion on whether an action to vacate the judgment would lie after the judgment became final." (*Urias, supra,* 234 Cal.App.3d at p. 423.) Agreeing with authorities suggesting that rulings by a disqualified judge are voidable rather than void, the court reasoned: "A party who seeks to declare a judgment void on the ground the judge was disqualified must allege and prove facts which clearly show that such disqualification existed. [Citation.] [¶] Under those authorities, the grant of summary judgment in this case is voidable if [plaintiff] 'properly raised' the disqualification issue and alleged facts which show the judge was disqualified to hear the case." (*Id.* at p. 424.)

Because the judge had consented to disqualification, the court deemed the facts alleged in the statement of disqualification to be true. (*Urias, supra,* 234 Cal.App.3d at p. 424.) The court determined that the statement was filed at the " 'earliest practicable opportunity' " after the plaintiff discovered the disqualifying facts (*id.* at p. 425), and also found that the statement alleged adequate facts to disqualify the judge, namely, that within the last two years the defendant was a client of the judge's former law firm and partner. (*Id.* at p. 426.) The court concluded: "Accordingly, plaintiff raised the issue of the judge's disqualification in a timely manner after the judge had completed judicial action in the proceeding and before the judgment was final. Further, his uncontradicted allegation established disqualification under section 170.1, subdivision (a)(2). Because the summary judgment was rendered by a disqualified judge, the judgment was voidable upon plaintiff's objection." (*Id.* at p. 426.)

On its face, the decision in *Urias* is distinguishable. There, the court agreed with the line of authority declaring judgments rendered by disqualified judges voidable rather than void. Thus, the court found the statements of disqualification timely because they were filed "after the judge had completed judicial action in the proceeding *and before the judgment was final.*" (*Urias, supra,* 234 Cal.App.3d at p. 426, italics added.) Of course, here the Bisnos'

statement of disqualification was filed after a final judgment on appeal. Thus, under the literal holding of *Urias*, the Bisnos' statement of disqualification was not timely.

Further, *Urias*'s interpretation of the statutory procedure cannot be extended to require that we deem the trial judge to have consented to disqualification by the Bisnos, or that we deem the allegations of the Bisnos' statement of disqualification to be true. The court in *Urias* conceded that the statutory disqualification scheme does "not prescribe a remedy for this situation where the judge is found to be disqualified after judgment is entered." (*Urias, supra,* 234 Cal.App.3d at p. 423.) Nonetheless, the court applied what is, in essence, the remedy provided by section 170.3, subdivision (c)(4): The court concluded that by failing to answer the statement of disqualification or strike it, the judge consented to disqualification, and also concluded that the facts alleged in the statement of disqualification must be deemed true. (234 Cal.App.3d at pp. 422, 424.)

We have no occasion on the facts here to disagree with the specific holding in *Urias* that section 170.3, subdivision (c)(4), applies to statements of disqualification filed in proceedings in which a judgment has been entered, but is not yet final. We caution only that the reasoning of *Urias* does not govern statements of disqualification filed after *final* judgment. As we have explained, the statutory disqualification procedure does not apply to statements of disqualification filed after final judgment. Thus, regardless of the analysis used in *Urias*, section 170.3, subdivision (c)(4), cannot be used to retroactively disqualify a nonresponding trial judge after final judgment; nor in those circumstances can it be used to deem the allegations of the disqualification statement true and require the vacating of the judgment.

Finally, even if we were to conclude that the statutory disqualification scheme applies to final judgments, and that we must assume the truth of the Bisnos' statement of disqualification, we would nonetheless hold that the trial judge was not disqualified. As stated in *Urias*, the party seeking to have a judgment declared void on the ground that the judge was disqualified must produce facts "which clearly show that such disqualification existed." (*Urias, supra,* 234 Cal.App.3d at p. 424.) In *Urias*, the allegations in the statement of disqualification, which were assumed to be true, stated sufficient facts to meet the prior representation ground of disqualification under section 170.1, subdivision (a)(2). Here, by contrast, the Bisnos' statement of disqualification failed to allege facts clearly showing that the trial judge was disqualified for incapacity under section 170.1, subdivision (a)(7).

In the statement of disqualification, the Bisnos' attorney purported to "object to the hearing of the above matter by the [named trial judge], on the

grounds that the judge is disqualified from hearing and determining this matter" under section 170.1. The stated ground for disqualification was that the judge "*is* unable to properly perceive the evidence or *is* unable to properly conduct the proceeding because of a permanent or temporary physical impairment in that [he] *is* suffering from an impairment of memory which prevents him from recalling the testimony adduced at trial." (Italics added.) This assertion relates to the judge's *current* ability to perceive evidence and to conduct proceedings. Of course, such an assertion is irrelevant to the judge's condition during the trial more than 19 months earlier. It certainly does not "clearly show" (*Urias, supra,* 234 Cal.App.3d at p. 424) that the ground for disqualification existed during the trial. Indeed, nowhere does the statement of disqualification mention that the Bisnos were seeking to retroactively disqualify the trial judge, vacate the judgment, and dissolve the permanent injunction.

Further, the only facts alleged in support of disqualification related to instances of incapacity *after* the trial. The Bisnos' attorney declared: "In instances *subsequent to the trial of this action,* [the judge] has exhibited to other lawyers a lack of memory and concentration while he was on the bench. I now believe that [he] was suffering from such lack of memory and concentration while acting as the trier of fact in this case and his physical impairments, while existing at the time of trial, became more manifest subsequent to the trial. I am informed and believe that [the trial judge's] impairments reached the point where he was put on administrative leave by the Superior Court. I first became concerned about [the trial judge's] physical impairments on or about October 17, 2005 through a conversation with another lawyer who knew that I had a case before [the judge] and himself had information about [the judge] having been placed on administrative leave and the reasons therefore. I subsequently followed up and confirmed that information with another lawyer known to me who also had a case before [the judge] and who informed me of his personal observations of [the judge's] physical impairments which manifested themselves in a lack of memory and concentration while on the bench."

Pointedly lacking from this recitation are any facts even remotely demonstrating the judge's purported incapacity during the Bisnos' trial. Not a single instance of erratic conduct or material loss of memory at trial suggesting incapacity is mentioned. That counsel, in retrospect, now believed that the judge was incapacitated adds nothing to the calculus. Hence, even if assumed to be true, the statement of disqualification fails to meet the Bisnos' burden of clearly proving that the trial judge was disqualified under section 170.1, subdivision (a)(7) during the trial.

## II.  *The Motion to Dissolve the Permanent Injunction*

Besides filing and serving a statement of disqualification, the Bisnos separately moved to dissolve the permanent injunction under Civil Code section 3424. That section provides, in relevant part: "Upon notice and motion, the court may modify or dissolve a final injunction upon a showing . . . that the ends of justice would be served by the modification or dissolution of the injunction." (Civ. Code, § 3424, subd. (a).) The Bisnos argued that "the ends of justice" required dissolution of the injunction because it was issued by a judge suffering from a disabling infirmity that prevented him from recalling the testimony at trial.

In substance, the Bisnos' motion is the equivalent of an equitable attack on a final judgment, seeking to vacate it based on retroactive disqualification of the judge for mental incapacity. A definitive ruling on whether a final judgment can be vacated on such a ground should await decision in a case where an otherwise adequate factual basis is provided, and the issue is adequately briefed. This is not such a case.

We shall assume (without deciding) that a motion to dissolve a permanent injunction subject to a final judgment may be made on the ground that the judge who issued it was disqualified for mental incapacity. As we have noted, the party seeking to have a judgment declared void on the ground that the judge was disqualified must produce facts "which clearly show that such disqualification existed." (*Urias, supra,* 234 Cal.App.3d at p. 424.) Because such a motion lies in equity, the ruling denying the motion is reviewed for abuse of discretion. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 771 [110 Cal.Rptr.2d 861].) "Under that standard, we resolve all evidentiary conflicts in favor of the judgment and determine whether the court's decision ' "falls within the permissible range of options set by the legal criteria." ' [Citations.]" (*Ibid.*)

On December 8, 2005, the Bisnos filed their motion to dissolve the permanent injunction. They later supplemented the motion on December 20, 2005. The basis of the motion was the Bisnos' contention that the trial judge was suffering from mental infirmities at the time of the trial that prevented him from recalling the testimony adduced at trial.

In support of the motion, the Bisnos' attorney filed a declaration in which he stated that he first became aware of the trial judge's mental infirmities on October 17, 2005, when informed by another attorney. In his supplemental showing, counsel declared that he learned that the Commission on Judicial Performance had commenced proceedings against the trial judge, seeking his removal on the ground that he suffered from degenerative brain disease that prevented him from performing his duties.

The motion judge found no competent evidence that the trial judge was incompetent during the trial, and denied the motion to dissolve the injunction. We find no abuse of discretion in that ruling. We discuss each category of evidence produced by the Bisnos in turn.

A. *The Trial Transcript*

The Bisnos presented 59 excerpts from the reporter's transcript of the 2004 bench trial. Through hindsight, the Bisnos' attorney contended that the excerpts showed the judge's disqualifying lapses of memory.

We have independently examined the excerpts in the context of the record as a whole.[5] Most are too trivial to mention in any detail. They depict such minor incidents as the judge once saying that he forgot the question asked by counsel, the judge asking for clarification of exhibit numbers,[6] the judge asking for clarification of whether an objection had just been made and the judge saying "pardon" in response to statements of counsel. Only three excerpts depict the judge expressing a lack of recollection concerning portions of the evidence: he did not remember a stipulation relating to the last page of exhibit No. 611; he did not remember testimony elicited "last week" concerning Robert Bisno's dispute with a member of the Association's architectural review committee, Brian Adler; and he did not recall the Bisnos' neighbor, Mike Medavoy, testifying that he liked the sculpture that the Association sought to have the Bisnos remove.

Such minor lapses certainly do not suggest that the judge suffered from a debilitating lack of memory sufficient to disqualify him from the proceeding. Indeed, at the hearing on the motion to dissolve the permanent injunction, the Bisnos' attorney conceded that during the trial nothing in the judge's conduct led him to believe the judge was disabled. Moreover, in opposition to the Bisnos' motion, the Association produced voluminous excerpts demonstrating instances of the trial judge's command of the proceedings and the evidence.

---

[5] We have granted the Association's motion requesting that we take judicial notice of the reporter's transcript of the trial.

[6] Our review of the trial record shows that scores of exhibits were introduced into evidence: exhibit Nos. 4, 10–12, 14–16, 22–23, 30–32, 35–36, 46, 50, 56, 60, 68–69, 70–71, 79–82, 86, 95, 99, 102, 104, 110, 113, 119, 121–123, 125–126, 135–137, 146, 151, 167, 169, 170, 172–175, 183, 185, 194, 197, 200–201, 207, 220, 221–222, 228, 244, 259, 269, 288, 323, 325, 328–329, 331–332, 334, 337–339, 345, 349, 355–360, 361–377, 379, 381–382, 500, 502–505, 506, 508, 510–511, 514–522, 525–527, 533, 536–539, 540–544, 546, 548–551, 557, 559, 562–565, 567, 572–575, 577–578, 584–585, 588–589, 590, 595–597, 601, 603, 606, 611, 613–615, 619–621, 624, 627, 633–634, 639–642, 643, 649, 651–655, 657–658, 660–712, 714, 715–716, 718, 721–729, 739, 740, 752, 765, 784–785, 787, 797, 799–804, 806–815, 817–818, 819–826, and 871. Thus, it is hardly surprising that the judge would occasionally seek assistance in clarifying which exhibits were being used at any particular time.

There is simply nothing in the record of the trial that reasonably tends to show that the judge was suffering from a disqualifying mental disability.

### B. *Disqualification Motions in Other Cases*

The Bisnos requested that the motion judge take judicial notice of motions to disqualify the trial judge from pending proceedings in three other cases. In the first (*Morgan v. California Federal Bank* (Super. Ct. L.A. County, No. BC308284)), a statement of disqualification was filed on April 20, 2005. The attorney for the moving party declared that the judge exhibited confused and unfocused behavior during proceedings occurring on April 11 through 13, 2005. In the second case (*Hunter v. State Farm Fire & Casualty* (Super. Ct. L.A. County, No. BC262742)), a motion to disqualify the judge was filed on April 25, 2005. The attorney for the moving party declared that in proceedings occurring on April 11, 20, and 21, 2005, the judge was confused and unaware of activities in the courtroom. On May 13, 2005, the judge consented to disqualification in that case, and the case was transferred to another judge.

In the third case (*Harris v. Investor's Business Daily, Inc.* (Super. Ct. L.A. County, No. BC269313)), the statement of disqualification was filed on December 16, 2005. The attorney for the moving party declared that he first became suspicious of the trial judge's mental impairment in early 2004, but did not have sufficient evidence to move for disqualification until December 15, 2005.

The motion judge took judicial notice of the declarations filed in these three cases, but not of the truth of their hearsay contents. The ruling was correct. The hearsay rule applies to statements contained in judicially noticed documents, and precludes consideration of those statements for their truth unless an independent hearsay exception exists. (See 1 Witkin, Cal. Evidence (4th ed. 2000) Judicial Notice, § 25, p. 119.) There is a hearsay exception for the use of declarations in motion practice, but that exception applies to declarations filed in support of motions in the present action, not those filed in other actions. Section 2009 provides that "[a]n affidavit may be used . . . upon a motion." Under section 2015.5, declarations under penalty of perjury may be used in lieu of affidavits. (§ 2015.5.) Thus, under section 2009, affidavits and declarations may be used in support of a motion, even though they are hearsay. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶ 9:46, p. 9(I)-24.) However, the "motion" referred to in section 2009 is a motion filed in the case at hand—section 1004 provides that "motions must be made in the court in which the action is pending." Thus, the limited hearsay exception of section

2009 for affidavits and declarations in support of a motion applies to motions filed in the present case, not those filed in support of motions in unrelated cases.

Nonetheless, even if the declarations are considered for their truth, they do not reasonably tend to prove that the judge was incapacitated during the Bisnos' 2004 trial. One of the declarations involved allegations of the judge's confused and unfocused behavior during proceedings on April 11 through 13, 2005. Another involved allegations of similar conduct occurring on April 11, 20, and 21, 2005. In the latter case, the judge consented to disqualification on May 13, 2005, and the case was transferred to another judge. Of course, the Bisnos' case was tried, and the permanent injunction issued, *more than one year before* these alleged incidents (trial Mar. 8–Mar. 26, 2004; permanent injunction issued Apr. 29, 2004). Thus, without more, these two declarations are irrelevant to prove that the judge was disqualified during the Bisnos' proceedings.

In the third declaration, the attorney seeking the judge's disqualification declared that he first became suspicious of the trial judge's mental impairment in early 2004, but did not have sufficient evidence to move for disqualification until December 15, 2005. This attorney's mere suspicion of the judge's mental impairment in early 2004, without real evidence until December 2005, does not reasonably tend to show that the judge was incapacitated when he issued the permanent injunction in the Bisnos' case, especially when considered in light of the lengthy trial record, which discloses no evidence of disqualifying impairment, and gave no participating attorney any concern over the trial judge's physical or mental state.

## C. *Notice of Proceedings by Commission on Judicial Performance*

Finally, the Bisnos' attorney requested that the trial court take judicial notice of the notice of formal proceedings instituted by the Commission on Judicial Performance on or about December 7, 2005.[7] The notice alleged that the judge suffered from a disability (degenerative brain disease) that seriously interfered with his judicial performance and was likely to become permanent.

The trial court correctly took judicial notice of the institution of proceedings, but not of the truth of the allegations in the notice. (See *Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 473 [282 Cal.Rptr. 389].) Although the allegations of the notice clearly cannot be considered for their truth, they would add nothing to the Bisnos' showing,

---

[7] The Bisnos also requested that the court take judicial notice of a news article from the Los Angeles Times, and a press release from the Commission on Judicial Performance. The trial court declined to do so, and the Bisnos wisely do not challenge that ruling on appeal.

even if considered true. The notice was not filed until more than 19 months after the permanent injunction was issued on April 29, 2004, and it fails to specify exactly when the alleged medical condition reached the point where it purportedly interfered with the judge's performance.

### D. *Conclusion*

Thus, assuming (without deciding) that a permanent injunction subject to a final judgment may be dissolved on the ground that the judge who issued it was disqualified for mental incapacity, the Bisnos failed to meet their burden of clearly proving that the disqualifying condition existed. (*Urias, supra*, 234 Cal.App.3d at p. 424.) Therefore, the motion judge did not abuse his discretion in denying the motion.

In this regard, we find the instant case analogous to *U.S. v. State of Wash.* (9th Cir. 1996) 98 F.3d 1159. There, in 1979 the district court judge issued a ruling holding that the plaintiffs, certain Indian tribes, had no fishing rights under a treaty. (*Id.* at p. 1162.) Before issuing his ruling, the judge had had surgery for an aortic aneurysm, and informed all counsel that because of his health, he had requested that the chief judge remove him from the case. The tribes, however, asked that the judge decide the case. The chief judge granted their request, and the district judge then ruled. The Ninth Circuit affirmed the judge's ruling, and the United States Supreme Court denied certiorari. (*Ibid.*)

However, in June 1992, a Seattle newspaper reported that when he ruled in 1979, the judge was suffering from Alzheimer's disease. The article noted that the judge's death certificate listed Alzheimer's, which set in during 1978, as a secondary cause of death. The article quoted the judge's son as stating that the judge was articulate until February 1978, when he went into a decline that ended with his death in 1984. The judge's son also stated that he believed the judge was competent when he ruled in 1979. (*U.S. v. State of Wash., supra*, 98 F.3d at p. 1162.)

In November 1993, the Indian tribes filed a motion in the district court under Federal Rules of Civil Procedure, rule 60(b)(6) (28 U.S.C.), to obtain relief from the 1979 judgment. Rule 60(b)(6) permits relief from a final judgment "upon such terms as are just" and for "any . . . reason justifying relief from the operation of the judgment." The tribes later argued that the motion was for the limited purpose of obtaining discovery concerning the trial judge's mental health at the time he made his 1979 ruling. (*U.S. v. State of Wash., supra*, 98 F.3d at p. 1162.) The district court denied relief, and a divided panel of the Ninth Circuit affirmed.

The Ninth Circuit majority noted that Federal Rules of Civil Procedure, rule 60(b)(6), provided an equitable remedy to prevent manifest injustice under extraordinary circumstances. The majority held that the trial judge's possible mental incompetence did not constitute extraordinary circumstances justifying the vacating of the judgment. The majority reasoned: "The Three Tribes argue that [rule] 60(b)(6) relief should be granted and discovery allowed because of the possibility that they were denied a competent fact-finder when their treaty status was decided by [the trial judge]. This is not one of those rare cases where 'extraordinary circumstances' warrant vacating an 'erroneous judgment.' The Three Tribes offer only [the trial judge's] death certificate and the Seattle Post-Intelligencer Article to support their contention that [the judge] may have suffered some mental impairment in 1979. The death certificate states that [the judge] was diagnosed with Alzheimer's sometime in 1978. In the newspaper article [the judge's] son says that his father was a changed man after his 1978 surgery, but that he was mentally competent when he decided the tribes' treaty status. The correspondence from [the judge] shows that the judge knew his surgery had physically weakened him and that he also knew of his obligation to decide the tribes' treaty status. When he felt unable to fulfill his commitment to decide the tribes' status 'within the next several months,' he asked [the chief judge] to remove him from the case. The tribes responded by requesting that [the judge] rule on their status before stepping down. [The chief judge] allowed their motion and [the judge] ruled. We should not reopen a judgment under these circumstances. Moreover, this court, as well as a magistrate judge, closely examined the case and reached the same conclusion as [the trial judge]. A decision on the issue of whether Rule 60(b)(6) gives the district court the power to correct a manifest injustice arising from a judge's disability should await the extraordinary circumstances in which it might be presented. The district court did not abuse its discretion in denying the Three Tribes' motion to reopen the judgment and allow discovery." (*U.S. v. State of Wash., supra*, 98 F.3d at pp. 1163–1164.)

Similarly, in the instant case, the Bisnos have produced weak evidence, at best, that the trial judge was disabled during their trial. Indeed, the trial record itself discloses no evidence reasonably supporting the Bisnos' claim. Like the majority of the Ninth Circuit in *U.S. v. State of Wash.* interpreting Federal Rules of Civil Procedure, rule 60(b)(6), we need not decide whether a permanent injunction subject to a final judgment may be vacated under Civil Code section 3424 on the grounds of the judge's mental incapacity. That determination must await a case with a compelling factual record, and focused briefing by the parties. Here, assuming the remedy sought by the Bisnos was available, the motion judge did not abuse his discretion in

refusing to dissolve the permanent injunction on the ground of the trial judge's alleged inability to recall the evidence at trial.

### III. *The Request for Discovery*

In conjunction with the motion to dissolve the permanent injunction, the Bisnos requested to take discovery. In particular, the Bisnos' attorney wished to depose the trial judge's wife to learn her observations of the trial judge's mental state and to determine the identity of the judge's treating physicians. He also wished to obtain the judge's mental health records. The motion judge denied the requested discovery.

In contending that the motion judge erred, the Bisnos rely on the concurring opinion of Judge Kozinski in *U.S. v. State of Wash., supra,* 98 F.3d at page 1166 (*United States*). Judge Kozinski concurred in the judgment of the majority, but on the ground that Federal Rules of Civil Procedure, rule 60(b)(6), provides no authority to vacate past judgments because of the judge's disability. Nonetheless, he stated his view that "*were* mental disability a proper basis for setting aside the judgment, plaintiffs would have made a sufficient showing" to obtain discovery "from the judge's doctors to confirm or refute speculation about the judge's competence." (98 F.3d at p. 1166 (conc. opn. of Kozinski, J.), original italics.) Judge Kozinski lamented, however, that the majority's ruling left "an open invitation to parties to rummage through the health records of judges who ruled against them five, ten, even twenty years ago, in the hope of coming up with a more compelling showing." (*Id.* at p. 1167.)

In the instant case, we find no reasonable basis to permit the Bisnos to depose the trial judge's wife, or to obtain his medical records. It bears repeating that even if we assume the remedy of dissolving the permanent injunction subject to a final judgment is available on the basis of the trial judge's mental infirmity, the Bisnos have made no showing to reasonably suggest that such an infirmity infected the issuance of the permanent injunction in their case. Absent such a showing, the Bisnos' request for discovery is nothing more than an attempt "to rummage through the health records of [a judge] who ruled against them . . . in the hope of coming up with a more compelling showing." (*United States, supra,* 98 F.3d at p. 1167 (conc. opn. of Kozinski, J.).) We find no abuse of discretion in the motion judge's denial of discovery. (Cf. *United States, supra,* 98 F.3d at p. 1164.)

## DISPOSITION

The order denying the motion to dissolve the permanent injunction is affirmed. The Association shall recover its costs on appeal.

Manella, J., and Suzukawa, J., concurred.

A petition for a rehearing was denied March 4, 2007, and appellants' petition for review by the Supreme Court was denied May 16, 2007, S151324.