Filed 5/5/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIAN ALPER et al., | G058088, G058908 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 30-2013-00670289) |
| PASQUALE ROTELLA et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Affirmed.

One, Peter R. Afrasiabi; ClintonBailey and Mark C. Bailey for Plaintiffs and Appellants.

The Kaufman Law Group, Gary Jay Kaufman and Noam Reiffman for Defendants and Respondents.

\*         \*         \*

A party may seek to disqualify a judge for cause if, due to "impairment," the judge is "unable to properly perceive the evidence or is unable to properly conduct the proceeding." (Code Civ. Proc., § 170.1, subd. (a)(7).)[1] The same rule extends to arbitrators: "If any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself *upon the demand of any party* made before the conclusion of the arbitration proceeding." (§ 1281.91, subd. (d), italics added.)

Here, four business partners had a dispute that ultimately led to a nine-day arbitration hearing. During the hearing, the arbitrator openly took pain medications. After the arbitrator issued a final ruling, the two losing partners filed a petition in the trial court to vacate the arbitration award. They alleged—for the first time—that the arbitrator was "unable to properly perceive the evidence or . . . unable to properly conduct the proceeding." (§ 170.1, subd. (a)(7).)

The trial court denied the petition based on principles of forfeiture: the losing partners failed to demand—at any point during the nine-day hearing—that the arbitrator needed to disqualify himself. Absent the legal jargon, the term "forfeiture" essentially means: "You snooze, you lose." We agree with the trial court. Thus, we affirm the court's order denying the petition to vacate the arbitration award.


I

FACTS AND PROCEDURAL BACKGROUND

In February 2005, Brian Alper and Brett Ballou (collectively plaintiffs) formed a partnership with Insomniac Inc., and Pasquale Rotella (collectively defendants): "The Partnership shall exist solely to finance and operate the annual dance-music festival under the name 'How Sweet It Is' [(HSII)] (the 'Event')." The HSII partnership agreement provided for contractual arbitration: "Federal rules of discovery shall apply."

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

In August 2013, plaintiffs filed a complaint against defendants for breach of contract, breach of fiduciary duties, and related claims. Plaintiffs Alper and Ballou generally alleged: "Defendants Insomniac and Pasquale breached the HSII's Partnership Agreement, and improperly usurped a partnership opportunity, by holding a competing dance-music event known as 'Beyond Wonderland' at the same time that HSII Partnership held its annual event." Defendants filed a motion to compel arbitration. The trial court granted the motion.

In July 2014, a retired federal judge was selected to arbitrate the matter. The arbitrator made written disclosures to the parties according to "applicable statutory and case law."

From May to June 2017, the arbitrator presided over a nine-day hearing. About six months later, the arbitrator issued a 21-page "Preliminary Award" in favor of defendants: "Pursuant to stipulation by the parties . . . , preparation of the Final Award in this abitration has been bifurcated. This Preliminary Award will relate solely to the merits . . . . Once proceedings on this award have been concluded, the parties will turn to briefing the damage . . . . When an award issues on the damages issues, the two awards will be consolidated into a single Final Award."

In November 2018, the arbitrator issued a 30-page "Final Award" in favor of defendants: "No party may directly or indirectly participate in or become involved in the production or performance of any EDM (Electronic Dance Music) program, concert or other similar program using the name HSII." (Boldfacing omitted.)

*Court Proceedings*

In February 2019, plaintiffs filed a petition to vacate the arbitration award.[2] Plaintiffs argued: "During the arbitration hearing, [the arbitrator] made it known to the

_____

[2] "Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award." (§ 1285.)

3

parties that he was [a] party to a personal injury action, that his injuries were causing him great pain, and that he was taking powerful painkillers that 'would knock a horse out.' [The arbitrator] regularly administered the painkillers throughout the course of the 9-day arbitration hearing." (Underlining omitted.)

Plaintiffs alleged: 1) "the Arbitrator failed to disclose his alleged inability to conduct or timely complete the proceedings"; and 2) "the Arbitrator exceeded the scope of his authority by applying federal law" rather than state law. Plaintiffs attached four declarations: Alper, Ballou, Mark C. Bailey (lead counsel), and Mark Hargan (cocounsel). Plaintiffs also requested the court take judicial notice of the arbitrator's personal injury case.

In March 2019, defendants filed an opposition and a cross-petition to confirm the arbitration award. Defendants attached a declaration by their counsel.[3] Defendants also attached a reporter's transcript of a portion of the arbitration hearing. Defendants further filed various evidentiary objections to plaintiffs' declarations.

In April 2019, the trial court heard oral arguments and invited supplemental briefing. In plaintiffs' supplemental brief they argued additional grounds to vacate the arbitration award: 1) their "rights were substantially prejudiced by misconduct of the arbitrator"; 2) "there was corruption of the arbitrator"; and 3) "the award was procured by undue means."

In June 2019, the trial court ruled: "Plaintiffs' petition to vacate the Arbitration Award . . . is DENIED. Defendants' request to confirm the Arbitration Award is GRANTED. Plaintiffs' request for judicial notice is GRANTED." (Boldfacing omitted.) The court also ruled on Defendants' evidentiary objections.

The trial court found "the evidence indicates that the Arbitrator disclosed that he was taking prescription medicine." The court held: "Because Plaintiffs were

---

[3] The contents of the parties' declarations will be summarized in the discussion portion of this opinion.

4

affirmatively told the facts they now claim as the basis for vacating the Arbitration Award, Plaintiffs waived the issue of the Arbitrator's use of prescription painkillers." As to the choice of law, the court held "the Arbitrator did not exceed his powers by relying on federal" law. As to all other claims (corruption, undue means, prejudicial misconduct, etc.): "The court finds that Plaintiffs did not meet their burden to provide proof to support any of the grounds for vacating the arbitration award."

## II
## DISCUSSION

On appeal, plaintiffs generally contend the arbitrator was impaired due to his use of prescribed medications during the hearing and he failed to disclose his alleged impairment and inability to timely conduct the proceedings, which "amounts to corruption, undue means, and prejudicial misconduct."[4] (Capitalization omitted.)

Ordinarily, in an "appeal from an order vacating an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard." (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55-56.) However, "[t]o the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." (*Ibid*.)

When conducting a substantial evidence review, we view the whole record in a light most favorable to the judgment, we resolve all evidentiary conflicts in favor of the decision, and we draw all reasonable inferences in favor thereof. (*CADC/RADC Venture 2011-1 LLC v. Bradley* (2015) 235 Cal.App.4th 775, 787.) "The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

---

[4] Plaintiffs have not raised the choice of law issue on appeal.

5

In this discussion we will:  A) state the principles of law regarding petitions to vacate arbitration awards; B) summarize the relevant evidence presented by the parties in the trial court; and C) analyze and apply the law to the facts.

*A.  Petitions to Vacate Arbitration Awards*

Contractual arbitration awards are ordinarily not subject to judicial review based on the merits of the underlying issues.  (See, e.g., *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6 [even though an error of law appears on the face of an arbitration award and causes substantial injustice, it is not subject to judicial review].)

However, a party may file a petition in a trial court to vacate an arbitration award based on the following structural grounds:  1) if the award was procured by corruption, fraud, or other undue means; 2) there was corruption in the arbitrator; 3) a party was prejudiced by the arbitrator's misconduct; 4) the arbitrator exceeded his or her powers; 5) a party was prejudiced by the arbitrator's refusal to postpone the hearing, refusal to hear evidence, or other conduct contrary to law; or 6) the arbitrator failed to make a required disclosure.  (§ 1286.2, subd. (a)(1)-(6).)

A party seeking to vacate an award based on an arbitrator's failure to disclose may do so when:  "An arbitrator making the award either:  (A) failed to disclose within the time required for disclosure a ground for disqualification *of which the arbitrator was then aware*; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but *failed upon receipt of timely demand* to disqualify himself or herself as required by that provision."  (§ 1286.2, subd. (a)(6), italics added.)

"A proposed neutral arbitrator shall be disqualified if he or she fails to comply with Section 1281.9 . . . ."  (§ 1281.91, subd. (a).)  "In any arbitration . . . , the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able

to be impartial, including . . . : [¶] (1) The existence of any ground specified in Section 170.1 for disqualification of a judge . . . ." (§ 1281.9, subd. (a).)

"A judge shall be disqualified if any one or more of the following are true [¶] (1)(A) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding. [¶] . . . [¶] (7) By reason of permanent or temporary physical impairment, the judge is unable to properly perceive the evidence or is unable to properly conduct the proceeding." (§ 170.1, subd. (a).)

"If any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself *upon the demand of any party made before the conclusion of the arbitration proceeding.*" (§ 1281.91, subd. (d), italics added.) Section 170.1 does not authorize a party to collaterally attack an adverse ruling after a proceeding has concluded. (See *North Beverly Park Homeowners Assn. v. Bisno* (2007) 147 Cal.App.4th 762, 769, italics added ["the language of the current disqualification statutes makes clear that the procedural scheme is directed at *pending proceedings*"].)

## B. Relevant Evidence

In support of their petition to vacate the arbitration award, plaintiffs Alper and Ballou filed sworn declarations, as did their attorneys Hargan and Bailey.

Alper averred: "3. For the first week of the arbitration hearing I watched the arbitrator closely due to the fact that I was the last witness to testify. I vividly recall over the course of the arbitration the Arbitrator openly taking his pain medication. On the first day of the hearing he pulled out his pill bottle and stated he was taking his l0 mg of Percocet to help with his pain. This action repeated itself daily, sometimes twice a day. Many of these times the Arbitrator announced that it was time to take his Percocet. He typically took the medication with a soda or similar drink before or after his lunch. Initially the Percocet use wasn't a major concern until the end of the first week of the arbitration when I noticed facts being mixed up and confusion by the Arbitrator."

Ballou averred: "3. I was the first witness and the one who was on the stand the longest and as such I had a good opportunity to sit and talk to [the arbitrator] throughout the proceedings. [¶] 4. From the first day, [the arbitrator] told me and the whole room that he was taking some very powerful pain killers such as Percocet. [¶] 5. I saw [the arbitrator] daily and usually after the lunch break, take out his bottle of pain killers and let it be known he was going to take some Percocet and what looked like to be other pain killers as well. This was a common occurrence throughout the nine-day trial. He at one point even commented that what he was taking was 'powerful enough to put down a horse.'"

Hargan averred: "3. During the arbitration I recall that during casual conversation off the record in the hearing room the Arbitrator stated in the presence of the attorney's [*sic*] and parties present at that time that he was taking pain medications for his physical condition."

Bailey averred: "9. On or about the second week of the 9-day arbitration hearing, attorney Mark Hargan commented that he had hurt his back and was in pain. In response to hearing this, the Arbitrator put his trial bag on the table and opened it, revealing multiple prescription bottles. He pulled them out one by one and listed their names. Each was a painkiller. The Arbitrator announced that he was 'taking stuff that would knock a horse out.' The Arbitrator then said to Mr. Hargan, 'I'd give you one of these, but it would probably knock you out and you wouldn't be any good to anybody.' Everyone in the room heard this. [¶] . . . [¶] 1. Over the course of the 9-day arbitration hearing, the Arbitrator regularly took pills from the prescription bottles in his trial bag. He would comment on the pills he was taking. I observed that he was unusually thirsty and constantly drank large amounts of Gatorade and energy drinks. [¶] 12. At this point, the parties had invested years of time and approximately $100,000 in arbitration fees. . . . There was little choice but to finish the arbitration hearing and hope for the best."

Plaintiffs also submitted a letter (not a declaration or an affidavit) from a doctor who generally described the effects of opioid pain killers, including Percocet: "It is my professional opinion that a dose of Percocet, on its own, does not generate sufficient impairment immediately after taking it, in the experienced user." The doctor concluded, "while it is unlikely an opioid like Percocet will generate impairment by taking it; but habituated use may generate some degree of cognitive interference in between dosages. In addition, the experience of severe pain is also sufficient to generate cognitive impairment, including the ability to hear facts and information, and engage in decision making behaviors."

Defendants' counsel averred in a declaration: "[The arbitrator] interjected with pointed questions, paid full attention, heard and ruled on motions and objections. He held numerous proceedings before, during and after the arbitration, and considered briefings and argument at each stage of the process." Counsel further averred: "I spoke to [plaintiffs'] counsel frequently during breaks in the arbitration, and before and after the arbitration itself. We discussed a myriad of topics and issues, ranging from case related to where to have dinner. Never once did Plaintiffs, Mr. Bailey or Mr. Hargan come close to express any concern or observation to me regarding [the arbitrator's] competency or ability to be impartial. Nor did I ever observe Plaintiffs or their counsel express concern to [the arbitrator] directly or ask him if he was okay."

*C. Analysis and Application*

Plaintiffs' arguments are somewhat scattershot, but they broadly contend: 1) the arbitrator was impaired and unable to perceive the evidence or to properly conduct the hearing due to his use of opioids; and 2) the arbitrator failed to disclose his alleged inability to properly and timely conduct the proceedings, which "amounts to corruption, undue means, and prejudicial misconduct." (Capitalization omitted.)

9

*1. Plaintiffs forfeited their contention that the arbitrator was impaired.*

A party may disqualify an arbitrator if the arbitrator is "unable to properly perceive the evidence or [was] unable to properly conduct the proceeding." (§ 170.1, subd. (a)(7).) But it is the party's statutory obligation to make a timely demand that the arbitrator disqualify himself. (§ 1281.91, subd. (d).)

Here, plaintiffs and their counsel each averred they were aware of the arbitrator's alleged use of pain medications during the arbitration hearing. Alper further averred he "noticed facts being mixed up and confusion by the Arbitrator." However, plaintiffs did not make a demand at any point to disqualify the arbitrator, nor did they even question the arbitrator's ability to conduct the hearing. Indeed, plaintiffs' counsel made a strategic decision "to finish the arbitration hearing and hope for the best."

In short, plaintiffs forfeited their contention the arbitrator was disqualified due to opioid use because plaintiffs did not raise the issue of impairment at any point during the arbitration proceedings. Although the trial court ruled plaintiffs had "waived" the issue, a failure to assert a right is more accurately termed a "forfeiture." (See *United States v. Olano* (1993) 507 U.S. 725, 733-734 ["Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right'"].)

In any event, our review of the transcript indicates the arbitrator was fully engaged, asked relevant questions, and was able to "properly perceive the evidence" and "to properly conduct the proceedings." (§ 170.1, subd. (a)(7).) Plaintiffs make much of the arbitrator's alleged comment that he was taking medications that were "'powerful enough to put down a horse.'" But this is obviously humorous hyperbole that no one would have taken seriously (indeed, neither plaintiffs nor their attorneys took the comment seriously). Further, the arbitrator's comprehensive written rulings also tend to validate the arbitrator's ability to perceive the evidence and to apply the law.

Thus, there is substantial evidence to support the trial court's factual finding: "Plaintiffs did not meet their burden to provide proof to support any of the grounds for vacating the arbitration award."

*2. Plaintiffs forfeited their contention that the arbitrator violated his statutory and ethical disclosure obligations.*

The statutes and ethical standards governing an arbitrator's disclosure duties require an arbitrator to disclose any matter affecting the arbitrator's ability "to properly perceive the evidence" and "properly conduct the proceeding." (§ 170.1, subd. (a)(7).) The disclosure must be made "in writing within 10 calendar days of service of notice of the proposed nomination or appointment." (§ 1281.9, subd. (6)(b).) The disclosure obligations persist throughout the arbitration proceedings: "If an arbitrator subsequently becomes aware of a matter that must be disclosed . . . , the arbitrator must disclose that matter to the parties in writing within 10 calendar days after the arbitrator becomes aware of the matter." (Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, std. 7(c)(2).)

If a party learns the arbitrator failed to disclose information relevant to disqualification, the party must object "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." (§ 170.3, subd. (c)(1).) "While failure to disclose properly a ground for disqualification generally mandates vacation of the award, this rule only applies if the party moving to vacate 'had no reason to know of the existence of a nondisclosed matter.' [Citation.] If a party is 'aware that a disclosure is incomplete or otherwise fails to meet the statutory disclosure requirements,' the party 'cannot passively reserve the issue for consideration after the arbitration has concluded.'" (*Cox v. Bonni* (2018) 30 Cal.App.5th 287, 306.)

Here, the plaintiffs allege the arbitrator repeatedly stated that he was taking powerful painkillers during the lengthy arbitration hearing. Therefore, to the extent that

11

the arbitrator had a duty to disclose in writing more formally (under either an objective or subjective standard), plaintiffs forfeited the issue by failing to object "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." (See § 170.3, subd. (c)(1).) Again, the plaintiffs unquestionably could not simply "finish the arbitration hearing and hope for the best."

Finally, plaintiffs contend the arbitrator's "failure to disclose the injury and impairment, and the opioid use also *amounts to* corruption, undue means and prejudicial misconduct under section 1286.2." (Capitalization omitted, italics added.) But plaintiffs' allegations are all predicated on their notion that the arbitrator violated his duty to disclose. Having found plaintiffs forfeited their claim that the arbitrator failed to comply with his disclosure obligations, we reject plaintiffs' remaining unfounded accusations concerning corruption, undue means, and prejudicial misconduct.

III

DISPOSITION

The trial court's order denying plaintiffs' petition to vacate the arbitration award is affirmed. Plaintiffs are ordered to pay defendants' costs on appeal.

MOORE, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

ARONSON, J.

12